**Linza PAYTON, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 1–981A266.**

Court of Appeals of Indiana, First District.

Feb. 1, 1982.

R. Steven Prifogle, Bloomington, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Judge.

Linza Payton appeals his conviction for forgery, a class C felony, for which he received a seven year sentence. We affirm.

The evidence favorable to the State reveals that Payton was charged with forgery by information on October 27, 1980. James Snoddy, a Monroe County probation officer, filed the information after Payton presented him with a photocopy of a purported receipt from the Kinser Lumber Company. Payton presented the receipt to show that he had complied with the Monroe County

Superior Court's probation order requiring him to make restitution for two bad checks he had written to the Kinser Lumber Company. Upon receiving the document, Snoddy sought to verify it and contacted David Williams, who was Kinser Lumber Company's credit manager. Williams stated that Kinser Lumber Company did not use that type of receipt. He also stated that to his knowledge the company was never reimbursed for the bad checks. Williams was responsible for resolving bad check problems.

Payton asserted that he had paid Kinser Lumber Company while in Bloomington on a camping trip. Payton explained that the appropriate person to take the money was not at the lumber company, but that he convinced another employee to take the money. According to Payton, this employee gave him the receipt.

Payton stipulated that the results of two polygraph tests were admissible at trial. Detective Sergeant Eric Shopmeyer administered the tests and asked Payton whether he had paid Kinser Lumber Company and whether he had received the receipt. Payton responded affirmatively. Detective Shopmeyer testified that the polygrams indicated Payton lied when he responded to the questions.

Payton presented two witnesses to support his version of these events. His stepfather testified that Payton came to Bloomington twice, in June or July of 1980, to borrow his camper and to pay bills. Payton's son testified that he went to the Kinser Lumber Company with his father in July, 1980, in order for his father to pay a bill. The son stated that he accompanied his father into the store and saw him hand $300.00 to a man. The man had gray hair and was wearing a white shirt. The son saw his father receive change and a receipt, however, he was not close enough to hear their conversation or tell exactly how much change his father received. The son also stated that the receipt his father received was not exactly like the copy presented at trial.

■ First, Payton argues the trial court erred by denying his verified motion for a continuance because of the absence of a witness. The motion was filed on March 17, 1981, two days prior to trial, and denied. On March 19, 1981, the trial date, Payton orally renewed the motion and it was denied again. The motion was made pursuant to Ind.Code 35–1–26–1, which specifies that:

Sec. 1. A motion by the defendant to postpone the trial on account of the absence of evidence can be made *only on affidavit showing materiality of the evidence expected to be obtained,* and *that due diligence has been used to obtain it,* and where the evidence may be; and *if the postponement be asked on account of an absent witness, the affidavit must show the name and residence of the witness, if known, and the probability of procuring his testimony within a reasonable time. The affidavit must further show that the absence of such witness has not been procured by the act or connivance of the defendant,* nor by others at his request, nor with his knowledge and consent, and *what facts he believes the witness will testify to, and that he believes them to be true, and that he is unable to prove such facts by any other witness whose testimony can be as readily procured.* If, thereupon, the prosecuting attorney will admit that the witness, if present, will testify to the facts which the defendant in his affidavit for continuance alleges that he can prove by the absent witness, or if the evidence exists, the trial shall not be postponed for that cause. *The defendant shall file such affidavit for continuance at least five (5) days before the date set for trial or shall sustain the burden of establishing to the satisfaction of the court, that the defendant is not at fault for failing to file such affidavit for continuance at an earlier date. If the motion for continuance is based upon the illness of the defendant or of a witness, the motion shall be accompanied by the oral testimony, in open court, or by the written statement of a physician or hospital official having the*

*care or custody of such defendant or witness, presenting the nature of the illness and the probable duration of his incapacity to attend trial. Such written statement of the physician or hospital official shall be sworn to by such physician or hospital official before a notary public or other officer authorized to administer an oath.* The court may appoint a physician who shall examine the defendant or the witness, and shall report to the court on the nature of the defendant's illness and the probable duration of his incapacity to attend trial. Compensation for such physician shall be provided by order of the court. (Emphasis added.)

In this case, the witness was ill with scarlet fever and the defendant became aware of her illness on March 16, 1981. On March 17, 1981, the witness's doctor signed a statement diagnosing her illness and indicating she would be unavailable for two weeks. This statement was attached to the affidavit for a continuance. The affidavit also indicated the witness would testify that Payton was working and had been in Bloomington three or four times during the summer of 1980 to visit and pay bills.

Payton argues that once he complied with the statute, he was entitled to a continuance as a matter of right because the prosecutor did not admit the facts which he would have proved by the absent witness. *See, Blume v. State,* 244 Ind. 121, 189 N.E.2d 568.

The denial of Payton's motion did not constitute reversible error. Several witnesses testified to essentially the same relevant facts that the absent witness would have given. In addition to Payton, his stepfather and his son testified that he was in Bloomington during the summer of 1980 to pay bills. His son also stated that his father took $300.00 to the Kinser Lumber Company. Therefore, Payton's request did not fall within the statutory criteria for a continuance in I.C. 35–1–26–1. Additionally, Payton was not prejudiced by the absence of the witness. The witness's absence is analogous to situations where evidence is excluded, but reversible error does not occur because the same facts are introduced by other evidence. *E.g. Jefferson v. State,* (1980) Ind.App., 399 N.E.2d 816. The trial court did not abuse its discretion by denying the motion.

Next, Payton argues the trial court erred by overruling his objection to statements made by the deputy prosecutor during his final rebuttal. Payton contends the deputy prosecutor's remarks should have been excluded because they were outside the scope of the evidence and because they constituted new evidence which he could not challenge by cross-examination.

The record reveals that Payton's counsel made the following remarks during her closing argument:

Now, another related element—well, okay—you might have a question—who did write this State's Exhibit 1, the statement from Kinser Lumber Company. Now, the prosecutor doesn't have to prove to you, who wrote, you know, this statement. We haven't heard any evidence of whose handwriting it is, anyth-ink [sic] like that; but the Prosecutor has known definitely, since December 4, 1980, when Mr. Payton took the polygraph, that he was gonna be saying he gave the money to some clerk, you know, in Kinser Lumber Company, and this clerk gave him the receipt. He's known that since that time—the State's known that. Why on earth did you not hear evidence from some clerk at Kinser Lumber Company; not the credit manager, or assistant manager, Mr. Williams, of Kinser Lumber Company? Why didn't the State have the clerk here, and say, "Mr. Clerk, I'll show you State's Exhibit 1. Is this your writing? Have you ever seen Mr. Payton? He didn't bring in anybody. Mr. Payton has already told him who he gave the money to, and who this receipt came from. Now, again, the Prosecutor doesn't have to prove to you who wrote it, but why on earth didn't he? You know, it would certainly have been a lot more convincing than what Mr. Williams told us. . . .

During his rebuttal, the deputy prosecutor responded:

Lets talk about the challenge which didn't come into evidence until the end, the challenge to this document. You'll see that this document is a copy, and the challenge is, why no handwriting exam; and the answer is, you can't analyze Xeroz copies, pen pressure, stroke, angle of penmanship, are all things that are done off of originals, not copies. And where is the original?

Payton's counsel objected after the statement was made, initially stating that she had not raised the issue of handwriting samples. She also made a partial statement, "I think its outside . . . ," and was cut off by the trial judge's response overruling the objection.

■ The State argues that Payton is raising different grounds for his objection than he did at trial and therefore, that he has waived the issue. Although Payton's counsel was interrupted, we agree that she had a duty to make a proper objection. In any event, we think this is a case where defense counsel's remarks provoked the improper remarks by the deputy prosecutor and an otherwise objectionable statement does not constitute reversible error when it is invited. *Lyda v. State* (1979) Ind.App., 395 N.E.2d 776.

■ As his third allegation of error, Payton asserts the trial court improperly refused his tendered instruction on deception as a lesser included offense of forgery. The test for determining whether a defendant is entitled to an instruction on a lesser included offense was discussed in great detail by Judge Staton in *Roddy v. State* (1979) Ind. App., 394 N.E.2d 1098. *See also, Copeland v. State* (1982) Ind.App., 430 N.E.2d 393. The first step involves a comparison of the elements comprising the two offenses to determine if there is in fact a lesser included offense as stated in *Ind.Code* 35–41–1–2:

"Included offense" means an offense that:

(1) is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged;

(2) consists of an attempt to commit the offense charged or an offense otherwise included therein; or

(3) differs from the offense charged only in the respect that a less serious harm or risk of harm to the same person, property, or public interest, or a lesser kind of culpability, is required to establish its commission.

Once it has been determined that the offense is a lesser included offense, step two requires an examination of the evidence in each case to determine if the defendant committed all the elements of the lesser included offense and *to determine if there is a serious dispute about whether the defendant committed those elements which distinguish the greater offense from the lesser offense.*

■ This latter point is dispositive of Payton's argument. If we assume that deception is a lesser included offense of forgery, an instruction on deception was still not required because there is no dispute about whether Payton committed the elements which distinguish forgery from deception. The elements of deception as applied to this case are: That Payton 1) with intent to defraud, 2) misrepresented, 3) the identity of property or 4) the identity of another person. The elements of forgery as charged are: That Payton, 1) with intent to defraud, 2) uttered a written instrument, 3) purporting to have been made by another person who did not give authority. In his argument, Payton equates "uttering without authority" to "misrepresentation" and equates a "written instrument" with "the identity of property". However, there is no serious dispute about the additional elements comprising forgery. It is clear that Payton did not merely misrepresent property but instead delivered (uttered pursuant to Ind.Code 35–41–1–2) a written instrument, a receipt. The written instrument was either made with or without authority of Kinser Lumber Company and Payton either committed forgery or no crime at all. Therefore, Payton was not entitled to an instruction on deception.

1180 

■ Payton asserts the trial court erred by allowing the jury to take a copy of the information into the jury room during its deliberations because the information contained a copy of the receipt. Payton relies on *Thomas v. State* (1972) 259 Ind. 537, 289 N.E.2d 508, in which our supreme court stated:

> The best rule is found in § 5.1 of the Standards Relating to Trial by Jury (American Bar Association Project on Standards for Criminal Justice):
>
> "5.1 Materials to jury room.
>
> (a) The court in its discretion may permit the jury, upon retiring for deliberation, to take to the jury room a copy of the charges against the defendant and exhibits and writing which have been received in evidence, except depositions.
>
> (b) Among the considerations which are appropriate in the exercise of this discretion are:
>
> (i) whether the material will aid the jury in a proper consideration of the case;
>
> (ii) whether any party will be unduly prejudiced by submission of the material; and
>
> (iii) whether the material may be subjected to improper use by the jury." (our emphasis).

259 Ind. 540, 289 N.E.2d 509.

Applying this rule, the information was appropriately submitted to the jury. The information would have aided the jury by specifically describing the charged offense. Any potential for prejudice or misuse was dispelled by the trial judge's admonishment that the information was not evidence. The fact that a copy of the receipt was attached to the information does not alter this conclusion. The receipt was the focal point of the case and the copy which Payton gave to Snoddy was introduced into evidence. Therefore, the copy attached to the information did not present improper, prejudicial evidence to the jury.

■ Payton also alleges the trial court erred by denying his motion for judgment on the evidence and alleges that the evidence was insufficient to support the verdict. In particular, he argues there was insufficient evidence to prove the receipt was written without authority and to prove he intended to defraud Kinser Lumber Company.

When the issue of the sufficiency of the evidence to support a conviction is raised on appeal, we will neither weigh the evidence nor determine the credibility of witnesses. Rather, we will consider only the evidence most favorable to the State, together with all reasonable inferences drawn therefrom, and if from that evidence and those inferences a reasonable trier of fact could find the existence of each element of the crime beyond a reasonable doubt, we will affirm the conviction.

*Gresham v. State* (1980) Ind.App., 414 N.E.2d 313, 317.

Applying this standard, the evidence was sufficient to sustain the verdict. Kinser Lumber Company's credit manager, David Williams, testified that the receipt which Payton gave probation officer Snoddy was unlike his company's receipts and that to his knowledge Payton had never made restitution. He was responsible for resolving bad check problems. It was reasonable for the trier of fact to infer that the instrument was made without the authority of Kinser Lumber Company. By presenting the receipt to his probation officer, Payton attempted to circumvent the court's order to make restitution of money he owed Kinser Lumber Company and thus, to effectively deprive the company of money he owed it. Because the evidence sustains the verdict, the trial court also did not err by denying the motion for judgment on the evidence.

Judgment affirmed.

RATLIFF, P. J., and NEAL, J., concur.