John SIGLAR, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 1185 S 448.

Supreme Court of Indiana.

Aug. 10, 1989.

Woodrow S. Nasser, Public Defender for Appeal, Terre Haute, for appellant.

Linley E. Pearson, Atty. Gen., Jay Rodia, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Chief Justice.

After a jury trial, John Siglar was convicted of murder, Ind.Code § 35-42-1-1 (Burns 1985 Repl.) and of conspiracy to commit murder, Ind.Code § 35-41-5-2 (Burns 1985 Repl.). The trial court sen-

tenced him to concurrent terms of fifty years for conspiracy and sixty years for murder.

Siglar raises five issues on appeal:

I. Whether his sixth amendment right to counsel was violated as a result of ineffective assistance;

II. Whether the trial court erred in allowing hearsay statements into evidence;

III. Whether the trial court erred in overruling Siglar's motion for mistrial based on prejudicial comments by the prosecutor;

IV. Whether the trial court erred in overruling Siglar's objection to statements the prosecutor made while cross-examining Siglar; and

V. Whether the evidence was sufficient to support the verdict.

In late July or early August 1983, Loretta Stonebreaker offered to pay Helen Williams to kill her husband, Leon Marion "Red" Stonebreaker. Williams refused. In early February 1984, Loretta asked Williams to reconsider and offered to pay Williams and her friend John Siglar $2500 to kill Red. Later that month Siglar and Williams went to Florida together to look for work. Just before they left, Loretta offered them $3000 to kill Red. They declined again.

Soon after arriving in Florida, Siglar and Williams decided to return home because they had no money. On the way back they decided to accept Loretta's offer. On February 13, 1984, they told Loretta they would kill her husband for her. Loretta suggested they use an ice pick. She told them to kill him in a pig lot so that the pigs would eat his body.

Loretta set up the scheme by telling her husband that they needed meat and asking him to steal a hog. She suggested that he take Siglar and Williams along to help him. This plan came to fruition on February 24, 1984. That night Loretta gave Williams two ice picks to take with her. Siglar, Williams and Red drove around that evening looking for a hog lot. They stopped at a round barn in Lodi, Indiana, and Siglar

and Red exited the car. Siglar, who was carrying his gun, told Williams to leave for a little while. She returned 15 to 20 minutes later, and Siglar got back in the car alone and said, "It's over. Done." He had Red's coin purse with him.

The next morning Arthur Uplinger found Red's body near the round barn. Red was dead, the result of a gunshot wound to the back of his head.

According to John Siglar, all the witnesses who gave testimony linking him to Red's death were either lying or mistaken.

### I. *Ineffective Assistance of Counsel*

Siglar argues that his attorney was ineffective. Among other complaints, he claims his lawyer did not prepare adequately, failed to object to certain evidence and to certain statements by the prosecutor, and lacked the ability to question witnesses properly.

■ Judicial scrutiny of an attorney's performance is highly deferential. The standard for counsel's performance is that of reasonably effective assistance. To prevail on his claim, Siglar must show that his attorney's performance fell below an objective standard of reasonableness under prevailing professional norms. He also must prove that his attorney's failure to function was so prejudicial as to deprive him of a fair trial. A fair trial is denied when the conviction or sentence results from a breakdown of the adversarial process that renders the result unreliable. *McChristion v. State* (1987), Ind., 511 N.E.2d 297, 300 (citing *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

■ *A. Preparation.* Siglar argues that his attorney was ineffective because he failed to interview defense witnesses prior to trial. Failure to interview defense witnesses prior to trial may constitute ineffective assistance if it appears that such interviews would have produced something substantive. Standing alone, it does not necessarily establish ineffective representation. *See Kelly v. State* (1983), Ind., 452 N.E.2d 907.

Siglar presents his attorney's failure to request that the court sequester the jury as another example of ineffective performance, especially given that his co-conspirator was tried in the same court the week before. This Court has noted that failure to request a change of venue despite pretrial publicity can be categorized as trial strategy and will not be considered ineffective assistance. *Wood v. State* (1987), Ind., 512 N.E.2d 1094. The failure of Siglar's attorney to request sequestering the jury is much the same. Without some demonstration of particular harm, it does not necessitate a finding of ineffective assistance.

**B. Failure to Object to Evidence.** Siglar cites his attorney's failure to object to the admission of the ice picks, the rifle, the bullet removed from Red Stonebreaker's head, a shell casing, and insurance policies. To establish that the failure to object to this evidence resulted in inadequate representation, Siglar must show that his counsel's objections would have been sustained if they had been made. *Kimble v. State* (1983), Ind., 451 N.E.2d 302.

Siglar argues generally that the evidence was inadmissible because it was not proven to be relevant. For example, he claims the ice picks had nothing to do with the issues in the case, that the rifle was not proven to be the weapon that discharged the bullet, and that neither the bullet nor the shell casing were positively proven to have come from the rifle. He also asserts that counsel should have objected to the insurance policies on the grounds that he was not a beneficiary. As for the rifle and ballistics evidence, this Court has said that while the State might strengthen its case by connecting the gun taken from the defendant to the gun that fired the bullet into the victim it is not required to do so. *Livingston v. State* (1972), 257 Ind. 620, 277 N.E.2d 363. As there was plenty of testimony linking each of these items to the conspiracy, Siglar fails to convince us that the trial court would have sustained these objections had they been made.

**C. Failure to Object to Statements by the Prosecutor.** Siglar claims that he received ineffective assistance because his trial attorney failed to object to comments the prosecutor made during his closing statement. Siglar argues that the prosecutor's statements put him in grave peril and concludes this section of his brief by invoking the pre-*Strickland* "mockery of justice" standard. The following examples are representative of the statements Siglar cites in his brief, arguing that had his attorney objected to these statements the court should have admonished the jury to disregard them, or even granted a mistrial.

1. Appellate counsel claims the prosecutor's reference to "defendants" in his closing argument was designed to invoke the conviction a week earlier of Siglar's co-conspirator, Loretta Stonebreaker. In fact, what the prosecutor said was, "It's unfortunate when a defendant or defendants decide they are going to commit a murder that they don't take a camera with them...." This reference is general and in no way invokes the conviction of Siglar's co-conspirator. It did not prejudice Siglar.

2. Appellate counsel suggests that Siglar was prejudiced by the prosecutor's statement that the victim was killed in a pig lot, when in fact the evidence only established that the victim was found dead in a pig lot. It is appropriate, and not prejudicial, for the prosecutor to present his theory of the case in closing argument.

3. Siglar argues that the prosecutor invaded the province of the jury by commenting on the credibility of a witness when he said in closing, "Leroy ain't smart enough to lie to you." In support of this claim Siglar makes reference to language from *Doyle v. State* (1984), Ind.App., 468 N.E.2d 528, 538, which states that a prosecutor's statement of personal opinion as to the defendant's guilt may require a mistrial. This claim, however, can be distinguished from that case as this statement does not address the guilt of the defendant, but rather the capability of a witness. While we do not condone this type of comment, it does not create the damage described in *Doyle*.

4. Without an accurate reference to the record, Siglar asks us to consider the prosecutor's statements to the jury that Siglar was "a pretty cool cucumber" and that "a decision by you is important to those police officers" as an inappropriate request that the jury convict in order to please others. In the context of the entire passage, however, it seems clear that the prosecutor was discussing the weight of the evidence in a permissible manner. He said:

> We have established and proved beyond any reasonable doubt that this man is the man that pulled the trigger.... Ladies and gentlemen this is serious and a decision by you is important to the State. It's important to these police officers. They haven't been in here to present a prefabrication for you or lie to you.

Grave peril is determined by the probable persuasive effect of the misconduct on the jury's decision, not by the degree of impropriety of the conduct. *Maldonado v. State* (1976), 265 Ind. 492, 355 N.E.2d 843. The prosecutor's closing statements were within the bounds of proper argument, and defense counsel's failure to object to them does not establish ineffectiveness.

*D. Other Ineffective Assistance of Counsel Claims.* Siglar also claims that his counsel failed to represent him adequately because of his inability to question witnesses, his presentation of conflicting evidence, and his failure to renew the motion for directed verdict at the end of trial.

Siglar quotes at length from the transcript of his trial, attempting to demonstrate trial counsel's inexperience and bad tactics. The passages he cites do indicate that his attorney asked unnecessarily long and confusing questions. However, none of the evidence before us suggests that any of the witnesses would have responded differently had they been asked more direct questions. Siglar does not allege that there was any information helpful to his case which his counsel failed to bring forth. Siglar's trial attorney's manner of questioning created no harm or prejudice.

Similarly, Siglar argues that his attorney elicited evidence on cross-examination to which he had objected on direct, but does not describe what harm this caused. Reasonable strategy might include shaping the jury's impression of potentially damaging information by eliciting the information through one's own questions rather than allowing his adversary to do so.

Finally, failure of trial counsel to move for a directed verdict does not create sufficient prejudice to result in a finding of ineffective assistance of counsel. *Gajdos v. State* (1984), Ind., 462 N.E.2d 1017. Siglar's attorney was not ineffective for failing to renew his motion for a directed finding at the end of trial.

In evaluating the cumulative effect of Siglar's claims of ineffective assistance we look to the standard which requires demonstration of both poor performance and prejudice. *Anderson v. State* (1986), Ind., 499 N.E.2d 1133. In this case there was abundant evidence implicating Siglar, including the confession and testimony of a co-conspirator, the testimony of Jerry Lamb and Leroy Hutts that they heard Siglar state he killed Red, evidence that Siglar had unexplained sums of money after Red's murder, and evidence that he had altered the gun since the date of Red's murder. Though Siglar has pointed to several weaknesses in the quality of his defense, the strength of the case against him makes it extremely unlikely that the jury would have found otherwise even in the absence of those weaknesses. We conclude that Siglar was not prejudiced by trial counsel's performance.

## II. *Hearsay Objections*

Siglar argues that the court erroneously overruled his objections to the admission of self-serving hearsay. He claims two statements by Helen Williams should have been excluded: her statement that Loretta Stonebreaker asked Siglar to kill her husband and her statement that Loretta Stonebreaker expected to get $3000 from insurance on her husband.

Helen Williams was the first witness to testify about facts which indicated a conspiracy. The prosecutor attempted to

question her about a conversation with Loretta Stonebreaker when Siglar's attorney objected on the basis that the hearsay could only come in under the co-conspirators exception *after* some evidence connected him to the conspiracy. Siglar's attorney argued "as a foundation to the admission of a co-conspirator's statement there must be some evidence ... of the existence of the conspiracy itself. This foundation cannot be established by statements of the alleged co-conspirator." He cited *Wallace v. State* (1981), Ind., 426 N.E.2d 34.

The trial court responded by asking the prosecutor to establish a prima facie case of conspiracy before asking Williams about Loretta's statement. The prosecutor attempted to do so by establishing a series of contacts between Williams, Loretta Stonebreaker, and Siglar, without revealing the content of their conversations. The witness described meetings with Loretta Stonebreaker in late July or August of 1983 and with Siglar and Loretta at the latter's home around February 5, 1984. Next, the prosecutor questioned Williams about a trip she took to Florida with Siglar.

Q– All right, on the way back, did you and John have conversations?

A– Yes, we did.

Q– What did you discuss?

A– We discussed about doing away with Red. We come up to agree to do it.

Q– All right. Did John agree to do it?

A– Yes.

Q– And had Loretta prior to your leaving for Florida offer you any money?

A– Yes, she offered us $3000.00.

[After two more questions Siglar's attorney renewed his objection and the trial court overruled it.]

(Record at 497). When faced with a similar situation in *Wallace v. State* (1981), Ind., 426 N.E.2d 34, this Court acknowledged the need to lay a foundation showing the existence of a conspiracy, but left the determination of when that requirement was met to the discretion of the trial judge.

Much latitude must, however, be allowed by the court in marshalling the facts and circumstances which bear upon the issue, and it must be left very largely to the discretion of the court trying the cause to determine whether or not there has been introduced evidence sufficient to establish prima facie the existence of a conspiracy so as to justify the admission of the acts and declarations of one confederate against another.

*Id.* at 41 (citing *Moore v. Shields* (1889), 121 Ind. 267, 269–70, 23 N.E. 89, 90.). In *Wallace* this Court found no error where Johnson, a co-conspirator, testified in court about facts establishing a conspiracy. That evidence was not considered hearsay. Once he had established the existence of a conspiracy, Johnson was then allowed to recount out-of-court statements by Shelby, another co-conspirator, though Shelby did not testify. 426 N.E.2d at 41.

Similarly, Judge Dowd was entitled to determine that Helen Williams' testimony in court provided the evidence necessary to show conspiracy and permit hearsay evidence under the conspiracy exception. Having so found, the court properly allowed her to recount Loretta Stonebreaker's out-of-court statements.

### III. *Prejudicial Comment by Prosecutor*

Siglar claims it was error for the trial court to overrule his motion for a mistrial based on prejudicial comment by the prosecutor. He claims he was prejudiced by the first question the prosecutor asked Rita Crowder, "Now, Rita, you've been in that seat before haven't you?" and her answer, "Yes."

Siglar argues that the exchange was a reference to Loretta Stonebreaker's previous trial and conviction and violated his due process right to a fair trial. Before Siglar's trial the court granted his attorney's motion *in limine* and instructed the State not to mention or attempt to elicit testimony regarding the trial of Loretta Stonebreaker.

The granting of a mistrial rests largely in the sound discretion of the trial

judge, and any error in the trial court's decision is determined by the facts of each case. *White v. State* (1971), 257 Ind. 64, 272 N.E.2d 312. The prosecutor's comment about Crowder's previous testimony did not put Siglar in grave peril for reasons Siglar's trial attorney acknowledged as he made his motion for mistrial: the prosecutor did not specifically mention the trial, its outcome, or even Loretta Stonebreaker's name, and the statement could have led to other inferences as well. (Record at 1042). Judge Dowd overruled the motion for mistrial because he did not find the inference strong considering there was no mention of Loretta Stonebreaker's trial. Under these facts he was within his discretion in doing so.

### IV. *Prosecutor's Statement while Cross-examining Siglar*

While cross-examining Siglar, the prosecutor said: "You expect us to believe that John?" Appellate counsel argues that the trial court erred by failing to sustain his objection to this comment. Because the record indicates that the trial court in fact sustained Siglar's objection to that comment (Record at 1463), no error has been presented.

### V. *Sufficiency of the Evidence*

Siglar concludes by arguing that the jury erred in finding him guilty of murder and conspiracy to commit murder because the evidence was insufficient to prove his guilt beyond a reasonable doubt. This Court reviews sufficiency claims by looking only at the evidence most favorable to the verdict and any reasonable inferences which may be drawn from that evidence. If a reasonable finder of fact could determine from the evidence that the defendant was guilty beyond a reasonable doubt, then we will uphold the verdict. *See Loyd v. State* (1980), 272 Ind. 404, 398 N.E.2d 1260, *cert. denied*, 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

There is abundant evidence favorable to the verdict in this case. Williams testified that Loretta Stonebreaker offered them $3000 to kill her husband. Williams said that the three co-conspirators developed and carried out a plan to trick Red into going with them, by telling him that they were going to kill a pig for meat for the family. She described the events of that evening including how Siglar and Red got out of the car by the round barn, how Siglar had his gun with him, and how Siglar got back in the car alone and said, "Its over. Done."

Jerry Lamb testified that several times in his presence Siglar had admitted he shot Red. Leroy Hutts testified that Siglar admitted to him that he killed Red. Rita Crowder testified that Siglar gave her fifty dollars and told her that he had gotten the money from Williams for his "payoff."

In light of this evidence the jury's verdict was reasonable, even though Siglar offered conflicting testimony.

Siglar also claims that his right to due process under the 5th and 14th amendments of the U.S. Constitution were violated because the investigation of Red's death was incompetently conducted by the police. He points to the fact that the police did not secure the scene of the crime to preserve evidence and that certain items found at the scene of the crime were not subjected to laboratory testing. The U.S. Supreme Court has held that unless a criminal defendant shows bad faith by the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law. *Arizona v. Youngblood*, —— U.S. ——, ——, 109 S.Ct. 333, 337, 102 L.Ed.2d 281, 289 (1988).

Finally Siglar asserts that the cumulative effect of all the errors he has raised is to deny him a fair trial. This argument fails because alleged errors which do not present a single basis for reversal do not gain the statute of reversible error when viewed *en masse. Lucas v. State* (1986), Ind., 499 N.E.2d 1090.

### IV. *Conclusion*

We affirm the judgment of the trial court.

DeBRULER, GIVAN, PIVARNIK and DICKSON, JJ., concur.