Howell ATKINS, Appellant
(Defendant Below)

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 71A03–8908–CR–00341.

Court of Appeals of Indiana,
Third District.

Oct. 23, 1990.

See also, 550 N.E.2d 342.

Susan K. Carpenter, Public Defender, David P. Freund, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

Howell Atkins appeals his conviction for Assisting a Criminal,[1] for which he was sentenced, as an habitual offender, to a term of 38 years. He presents multiple issues for our review.

I. Was the State's challenge to venireman Copley erroneous?

II. Did the State violate Atkins' right to equal protection of the law by exercising a peremptory challenge to a member of Atkins' race?

III. Did the trial court err in requiring Atkins to wear leg restraints?

IV. Was Atkins' right of confrontation violated by the court's admission of Eddie Briggs' pretrial deposition?

V. Was the verdict supported by sufficient evidence having probative value?

VI. Did the trial court err in denying counsel's request to withdraw his representation of Atkins?

VII. Was Atkins denied effective assistance of counsel?

Affirmed.

Eddie Briggs confessed to the murder of Raymond Hinsey and the theft of Hinsey's automobile. According to Briggs' statement, Atkins cleaned the automobile and disposed of Briggs' bloodstained clothing and knife. The pair then drove Hinsey's automobile to Chicago and attempted to sell it. While in Chicago, Atkins used Hinsey's credit cards to purchase clothing, food and toiletries.

## I.

### Juror Challenge for Cause

During jury *voir dire*, several prospective jurors were challenged based on their failure to meet the householder requirement under IC 33-4-5-7(a) (Burns 1985). Pursuant to a challenge by the State, Brian Copley was dismissed. Atkins contends that Copley's dismissal was improper.[2] He argues that the householder requirement has little relevance in today's society.

Although IC 33-4-5-7 has been amended, effective July 1, 1989, to delete the householder requirement, at the commencement of Atkins' trial on April 3, 1989, the requirement was in effect. Prospective jurors residing in the homes of their parents did not meet the definition of "householders" and were thus properly excludable from jury service under the former statute. *Shepherd v. State* (1989), Ind., 547 N.E.2d 839, 841. Brian Copley indicated that he lived with his parents in their home; he was therefore properly excused from jury service.

## II.

### Use of Peremptory Challenge

Secondly, Atkins contends that he was denied equal protection of the law based upon the prosecutor's use of a peremptory challenge. Atkins is black, as were three members of the venire. Brian Copley was challenged for cause, Rochell

---

1. I.C. 35-44-3-2.

2. Evidently only the dismissal of Copley was challenged on appeal as he, like Atkins, is a black man.

Conigan was seated as a juror, and Maxine Smith was peremptorily challenged.

The State, upon Atkins' request, articulated the reasons for the challenge to Ms. Smith. The reasons given were her age (21) and her family's acquaintance with the Briggs family. Atkins finds these reasons implausible. He contends that the State systematically excluded black persons from the jury.

To establish a *prima facie* case of purposeful discrimination based on the use of peremptory challenges, a defendant must show that he is a member of a cognizable racial group, the prosecutor peremptorily challenged members of the defendant's race and relevant circumstances raise an inference that the challenged persons were excluded because of race. *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69; *Weekly v. State* (1986), Ind., 496 N.E.2d 29, 31. If these factors are shown, the prosecutor must come forward to provide a neutral explanation for the challenge(s) used. *Minniefield v. State* (1989), Ind., 539 N.E.2d 464, 466, *reh. denied.* The explanation need not rise to the level necessary to make a challenge for cause. *Splunge v. State* (1988), Ind., 526 N.E.2d 977, 980 *cert. denied*, — U.S. —, 109 S.Ct. 3165, 104 L.Ed.2d 1028.

The trial court then must determine if purposeful discrimination was established. The decision of the trial court will be given great deference upon appeal. *Id.* In the instant case, the trial court found that the defendant had not met his burden of establishing purposeful discrimination in the prosecutor's exercise of juror challenges. This finding is supported by the record. The prosecutor directed challenges toward both black and white individuals; the seated jury consisted of black and white persons. The exclusion of Ms. Smith was based upon a valid reason, inasmuch as members of her family had knowledge of and had made statements concerning the Briggs' family. *Id.*

## III.

### *Physical Restraints*

Atkins next complains that he was required to wear leg restraints in the courtroom. He asserts that a criminal defendant has a right to appear before the jury as a free and innocent man, relying upon *Coates v. State* (1985), Ind.App., 487 N.E.2d 167.[3]

During Atkins' original trial, which ended in a mistrial, he objected to the use of leg restraints. The court responded that such restraints were routinely used in his courtroom, and were not visible to the jurors.

Assuming that Atkins was likewise restrained during the instant trial, he failed to renew his objection. To the contrary, his conduct and communication with the court invited restraint. Atkins made the following comments directly to the court:

ATKINS: Now, I'll make you tie me down in here, okay? I mean, if you want a mistrial, we can have one.

(Record, p. 813).

ATKINS: I want you to put that over my mouth and let me have it, and take me back to jail, and you just hold this kangaroo court out here, and let's talk about the fact that my mother was beat up in court yesterday, and we had a police—

(Record, p. 1377).

Atkins' outbursts and admitted attempts to invoke a mistrial necessitated, after repeated warnings, his removal from the courtroom. Atkins' assertion that the jury received a false impression that he is "dangerous" based upon the presence of ostensibly visible leg restraints is without merit. He is clearly not entitled to reversal on this issue, as he has failed to affirmatively demonstrate that error occurred, which was prejudicial to his substantial rights. *Sharp v. State* (1989), 534 N.E.2d 708, 714 *cert. denied*, — U.S. —, 110 S.Ct. 1481, 108 L.Ed.2d 617.

---

**3.** The Coates court held that requiring a defendant to appear at trial in chains and handcuffs was erroneous, absent a showing of necessity for the restraints.

## IV.

### Admission of Briggs' Deposition

■ Eddie Briggs refused to testify at Atkins' trial, despite repeated attempts by the State to procure his testimony.[4] The court permitted Briggs' deposition to be read into evidence, upon finding that he was unavailable due to his refusal without cause to testify.

Atkins admits that the trial court correctly found that Briggs was unavailable. However, he argues that his right of confrontation was not protected. He asserts that the State requested the deposition and that his prior attorney engaged in limited cross examination of Briggs. Further, Atkins was not present and claims that his attorney may not waive his right to be present.

■ Admission of a deposition into evidence is reviewable only for abuse of discretion. *Drummond v. State* (1984), Ind., 467 N.E.2d 742, 746. We will give great deference on appeal to a trial court's finding that an accused's right of confrontation was protected.

■ Atkins refers us to *Gallagher v. State* (1984), Ind.App., 466 N.E.2d 1382. In *Gallagher,* the court opined that when the State takes a witness deposition, the defendant and his counsel should be given notice and opportunity to confront the witness. *Id.* at 1385. The court stated that the admission of a deposition at trial taken without the defendant *or* defendant's counsel present could constitute a violation of a defendant's due process rights. *Id.* (Emphasis in original). A defendant does not, however, possess an absolute right of face-to-face confrontation. *Id.* at 1386, citing *Ohio v. Roberts* (1980), 448 U.S. 56, 63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597, 605–06; *Mattox v. United States* (1895), 156 U.S. 237, 243, 15 S.Ct. 337, 340, 39 L.Ed. 409, 411; *Alspach v. State* (1982), Ind.App., 440 N.E.2d 502.

The *Gallagher* court considered whether a defendant's right of confrontation could be waived by a defendant's attorney, and concluded that it could. *Gallagher, supra,* at 1386. *See also, Abner v. State* (1985), Ind., 479 N.E.2d 1254, wherein an appellant claimed error in the admission into evidence of a deposition which she did not initiate. The court held that Abner's attorney's presence at a deposition requested by a co-defendant waived Abner's right to object based on lack of confrontation. *Id.* at 1262.

Here, the trial court correctly found that Atkins' right of confrontation was protected. Briggs was cross-examined, under oath, by Atkins' attorney. The defense attorney need not engage in extended questioning to preserve a defendant's right of confrontation; the critical inquiry is whether the opportunity to do so was given. *Roberts, supra.*

## V.

### Sufficiency of Evidence

■ Atkins next contends that the State presented insufficient evidence to support his conviction. Specifically, he claims that his intent to help Briggs was not established. He seeks to discredit Briggs' statements as being those of a murderer and a liar.

The task of assessing credibility does not fall upon an appellate body; this function is entrusted to the jury. *Jones v. State* (1988), Ind., 518 N.E.2d 479, 481. In the instant case, the jury was given ample guidance in their assessment of Briggs' deposition. Various methods of impeachment were employed. The jury was informed that Briggs had confessed to murder. During cross examination at the deposition, Briggs admitted to a previous misdemeanor conviction. Atkins was permitted to introduce a lengthy statement given by Briggs to the police, allegedly containing inconsistencies when compared to his deposition, for purposes of impeachment.

**4.** Briggs was threatened with contempt of court, denial of credit for good behavior and privilege revocation. He was offered State support for a motion to reconsider five years of his sentence and placement in a penal facility separate from Atkins.

(Record, p. 962–997).

The jury also heard numerous witnesses who corroborated details of Briggs' deposition. Several identified Atkins as the user of Hinsey's credit cards in Chicago. A fingerprint expert identified as Atkins' a print lifted from Hinsey's automobile. Abundant evidence was presented from which the jury could properly conclude that Atkins intended to assist Briggs, and did in fact assist him.

## VI.

### Appointment of New Counsel

■ Atkins alleges that a conflict of interest was brought to the attention of the court by his counsel, but that the court failed to inquire into the substantive basis of the conflict. He further claims that the alleged conflict hindered counsel's effective representation.

Atkins' trial counsel, Mr. Hilgendorf, at various times requested permission to withdraw his representation of Atkins. He informed the court that Atkins had sued him in federal court, alleging inadequate representation. Additionally, Hilgendorf indicated that Atkins had threatened and verbally abused him. Atkins expressed a desire to obtain private counsel.

In considering the request for withdrawal, the court detailed the history of Atkins' representation during the prosecution of the instant charge. Atkins was initially represented by appointed counsel, who withdrew when Atkins obtained. private counsel. Atkins then expressed a desire to proceed *pro se.* After extensive hearing on the matter, he was permitted to do so, and stand-by counsel was appointed. Atkins then filed motions seeking the appointment of a specific attorney. At the brink of trial, Atkins indicated that he no longer desired to proceed *pro se* with stand-by counsel, but desired to be fully represented by appointed counsel. At this point, Mr. Hilgendorf was appointed to represent him.

The court stated that Mr. Hilgendorf had engaged in professional and diligent representation of Atkins. Opining that a change of representation would cause unnecessary delay and effect no improvement in representation, the court declined to permit Mr. Hilgendorf's withdrawal.

The adequacy of an inquiry into a potential conflict is to be determined in light of the individual situation. *Patterson v. State* (1979), 270 Ind. 469, 386 N.E.2d 936, 941, *cert. denied,* 444 U.S. 935, 100 S.Ct. 283, 62 L.Ed.2d 194. Here, contrary to Atkins' assertion, the court fully examined the facts underlying the claimed conflict and determined the probable impact on Atkins' representation. In light of counsel's prior diligent performance, the court correctly determined that Atkins' defense would not be compromised by Mr. Hilgendorf's continued representation.

## VII.

### Ineffective Assistance of Counsel

Lastly, Atkins contends that he was denied effective assistance of counsel. He may prevail upon this claim only if he shows that trial counsel's performance was deficient, and that such deficiency was so prejudicial as to deprive him of a fair trial. *Siglar v. State* (1989), Ind., 541 N.E.2d 944, 946. In so doing, he must overcome a strong presumption that counsel rendered reasonable professional assistance. Judicial scrutiny of counsel's performance is highly deferential. Isolated poor strategy, inexperience or bad tactics do not alone constitute ineffective assistance of counsel. *Mftari v. State* (1989), Ind., 537 N.E.2d 469, 473.

Atkins complains that his counsel failed to make relevant objections to certain evidence, failed to offer testimony of potential witnesses and failed to argue his *pro se* motions.

■ Counsel's failure to object to the presentation of evidence is erroneous only if such objection would have been sustained if made. *Siglar, supra,* at 947. Atkins fails to convince us that the trial court would have been required to sustain an objection to references to his criminal past. These may well have been admissible to show motive, as Atkins was previously convicted of automobile theft, and automobile theft provided the motive for Hinsey's murder. *Jenkins v. State* (1985), Ind., 474 N.E.2d 84, 88 *reh. denied.*

Further, a decision not to pursue particular witness testimony is erroneous only if substantive evidence would have been produced. *Siglar, supra,* at 947. Atkins does not indicate what evidence may have been provided by any individual whose name he offered to his attorney. He therefore fails to guide us as to how he may have been prejudiced.

Atkins' trial counsel did decline to argue Atkins' *pro se* Notice of Alibi. As counsel vigorously and ably argued a number of motions on Atkins' behalf, his decision to refrain from argument on the Notice of Alibi in particular may fairly be characterized as a strategy decision and not an abdication of duty. We do not second guess through the use of hindsight every decision made by counsel at trial. *Mftari, supra,* at 473.

Our review of the trial record indicates that Atkins' counsel provided representation well within that anticipated under professional norms. He offered relevant evidence, made appropriate motions and objections and extensively cross examined the State's witnesses. Atkins failed to show that his trial counsel's performance was deficient and prejudicial to him.

Affirmed.

SHIELDS, P.J., and GARRARD, J., concur.