Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 23 2013, 5:43 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**KELLY A. KELLY**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**HENRY A. FLORES**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JAMES CAMERON, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 20A05-1304-PC-170 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE ELKHART CIRCUIT COURT
The Honorable Terry C. Shewmaker, Judge
Cause No. 20C01-1105-PC-7

**October 23, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

James Cameron ("Cameron") appeals the Elkhart Circuit Court's denial of his petition for post-conviction relief. On appeal, Cameron claims that the post-conviction court clearly erred when it concluded that he was not denied the effective assistance of trial and appellate counsel.

We affirm.

**Facts and Procedural History**

The facts underlying Cameron's convictions were set forth in the memorandum decision of this court affirming Cameron's convictions on direct appeal:

> Near midnight on January 23, 2007, Yosminda Jackson ("Jackson") drove with her nine-year-old daughter and three-year-old son to Terrance Jones's ("Jones") residence to pick up a birthday present. Jones entered Jackson's vehicle when she arrived. Shortly thereafter, approximately four black males surrounded the vehicle. One man opened a back door and pointed a gun at the nine-year-old's head. They demanded money and stole Jackson's purse and money from Jones. After the robbery, Jackson stated that five black males fled to a nearby vehicle where a sixth man waited behind the vehicle's wheel. Jackson testified that one of the men wore a red shirt. The five black males were identified as Cameron, Leon Burnett ("Burnett"), Troy Jones ("Jones"), D.M., a juvenile, and Brandon Franklin ("Franklin"). The driver of the getaway vehicle was identified as Zachariah Cassidy ("Cassidy").
>
> An hour and a half later, Cameron Barker ("Barker"), Rebecca Cooper ("Cooper") and their two-year-old daughter were going to Cooper's residence. They were stopped by two black males who pointed a gun at them. Barker was struck in the head from behind. The men stole Barker's keys, Barker's cell phone and Cooper's purse and then ordered them to run. Barker then saw four men enter a parked vehicle. D.M. later told police that Cameron pointed the gun at the family and told them "that they better get out of there or otherwise he was going to kill them." Later, Franklin and Jones also told police that Cameron took part in this robbery.
>
> Later that same evening, Cameron, and at least one other accomplice, broke into a nearby house. The homeowner, Glenn Dooley ("Dooley"), heard broken glass and other noises, and investigated. When Dooley went downstairs, a man ran by him toward the back door while Cameron ran toward the front door. While Cameron attempted to open the front door,

2

Dooley's daughter, Gelisa Porter ("Porter"), came down the stairs. Porter saw Cameron standing ten feet away and he looked her "dead in the eyes." At trial, Porter described Cameron as having a "round face, light skin, short hair, [and] big bug eyes." Porter also stated that Cameron had a gun and wore a "black hoodie" and "red t-shirt." Porter later identified Cameron from a photo array as the man seen in her father's house on January 23, 2007. After the burglary, a twenty-dollar bill was missing from the kitchen table.

After fleeing, Cameron's accomplices drove off and left Cameron behind. These accomplices were found in the vehicle driven by Cassidy and taken into custody by police. Cameron's accomplices gave signed statements to police that set out Cameron's participation in criminal activities of the evening. Cameron was subsequently arrested.

Cameron v. State, No. 20A03-0906-CR-254 (Ind. Ct. App. Jan 21, 2010), trans. denied (record citations omitted).

The State subsequently charged Cameron with six counts of Class B felony robbery while armed with a deadly weapon, Class B felony robbery, and Class D felony pointing with a firearm. During a three-day jury trial, all of Cameron's accomplices generally denied that Cameron had any involvement in the events of January 23, 2007. This testimony contradicted their statements made to the police shortly after the events, and these statements to the police were admitted into evidence without objection. At the conclusion of trial, the jury found Cameron guilty as charged, and the trial court sentenced Cameron to an aggregate term of sixty years incarceration. On direct appeal, Cameron claimed that the evidence was insufficient to support his convictions and that his sentence was inappropriate in light of the nature of the offense and the character of the offender. This court affirmed Cameron's convictions and sentence, and our supreme court denied Cameron's petition to transfer. See id.

3

On May 6, 2011, Cameron filed a *pro se* petition for post-conviction relief. Cameron was then appointed counsel, and counsel filed an amended petition on March 7, 2012, claiming ineffective assistance of trial and appellate counsel. The post-conviction court held a hearing on Cameron's petition on December 13, 2012, and on March 30, 2013, the post-conviction court entered findings of fact and conclusions of law denying Cameron's petition. Cameron now appeals.

**Post-Conviction Standard of Review**

Post-conviction proceedings are not "super appeals" through which convicted persons can raise issues they failed to raise at trial or on direct appeal. McCary v. State, 761 N.E.2d 389, 391 (Ind. 2002). Rather, post-conviction proceedings afford petitioners a limited opportunity to raise issues that were unavailable or unknown at trial and on direct appeal. Davidson v. State, 763 N.E.2d 441, 443 (Ind. 2002). A post-conviction petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. Henley v. State, 881 N.E.2d 639, 643 (Ind. 2008). On appeal from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. Id. To prevail on appeal from the denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. Id. at 643-44.

Where, as here, the post-conviction court makes findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6), we must determine if the court's findings are sufficient to support its judgment. Graham v. State, 941 N.E.2d 1091, 1096 (Ind. Ct. App. 2011), aff'd of reh'g, 947 N.E.2d 962. Although we do not defer to

4

the post-conviction court's legal conclusions, we review the post-conviction court's factual findings under a clearly erroneous standard.  Id.  Accordingly, we will not reweigh the evidence or judge the credibility of witnesses, and we will consider only the probative evidence and reasonable inferences flowing therefrom that support the post-conviction court's decision.  Id.

### I.  Ineffective Assistance of Trial Counsel

Cameron first contends that the post-conviction court clearly erred in denying his claim of ineffective assistance of trial counsel.  Our supreme court summarized the law regarding claims of ineffective assistance of trial counsel in Timberlake v. State as follows:

> A defendant claiming a violation of the right to effective assistance of counsel must establish the two components set forth in Strickland v. Washington, 466 U.S. 668 (1984).  First, the defendant must show that counsel's performance was deficient.  This requires a showing that counsel's representation fell below an objective standard of reasonableness, and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

> Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference.  A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  The Strickland Court recognized that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client.  Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective.  The two prongs of the Strickland test are separate and independent inquiries.  Thus, [i]f it is easier to dispose of an

5

ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.

753 N.E.2d 591, 603 (Ind. 2001) (citations and quotations omitted). Here, Cameron contends that his trial counsel committed several errors that amount to ineffective assistance. We address each of his contentions in turn.

A. *Statements of Co-conspirators*

Cameron first argues that his trial counsel was ineffective for failing to object at trial to the admission of statements his co-conspirators made to the police. When questioned by the police, Cameron's compatriots made statements implicating him in the robberies, but at trial, these men denied that Cameron was involved. The State then admitted into evidence these witnesses' prior statements to the police without objection from Cameron's trial counsel. Cameron now claims that these statements were inadmissible hearsay and that his trial counsel was ineffective for failing to make any objection to the admission of these prior statements.

However, at the post-conviction hearing, Cameron's trial counsel testified that he had a strategic reason for not objecting to the admission of these statements. Specifically, he testified that he did not object because he had elicited the information he wanted for his defense strategy and that he chose not to ask for a limiting instruction or admonishment because he does not like to give the jury an impression that he is trying to hide something. And during his closing argument, Cameron's trial counsel emphasized that, when the others involved in the crimes gave their statements to the police implicating Cameron, they were under the influence of marijuana and attempting to

6

minimize their own involvement. But when placed under oath, they did not implicate Cameron. Cameron's trial counsel used these prior statements in an attempt to bolster the credibility of the witnesses' testimony instead of undermine it.

We cannot say that this strategy, though unsuccessful, was unreasonable. The same is true with regard to trial counsel's failure to seek an admonition or limiting instruction regarding the prior statements. Counsel clearly stated he had a strategic reason for not requesting such an admonishment, and we will not second-guess this strategic decision with the benefit of hindsight. Cameron's claim that it was simply "not good strategy" in this case is insufficient to establish deficient performance. Again, we emphasize that trial counsel is afforded considerable discretion in choosing strategy, and we must afford these decisions deference. Timberlake, 753 N.E.2d at 603. We will not second guess trial counsel's strategic decisions simply because, in hindsight, they did not serve the defendant's best interests. State v. Moore, 678 N.E.2d 1258, 1261 (Ind. 1997). The post-conviction court did not clearly err in concluding that Cameron had not overcome the strong presumption of his trial counsel's competence.

B. *Directed Verdict*

In one sentence, Cameron claims that "because there was no substantive evidence of Cameron's involvement in the robberies, [trial counsel] should have requested a directed verdict." Appellant's App. p. 14. Cameron fails to set forth the standard of review for directed verdicts or explain in any detail why the trial court would have granted a motion for a directed verdict. As such, we consider this particular argument to be waived. See Ind. Appellate Rule 46(A)(8)(a). Waiver notwithstanding, our supreme

7

court has held that the "failure of trial counsel to move for a directed verdict does not create sufficient prejudice to result in a finding of ineffective assistance of counsel." Siglar v. State, 541 N.E.2d 944, 948 (Ind. 1989).

C. *Severance*

Cameron next claims that his trial counsel was ineffective for failing to move to sever the charges. Offenses may be joined for one trial if they are: (1) of the same or similar character or (2) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan. Ind. Code § 35-34-1-9(a). If offenses are joined solely because they are of the same or similar character, the defendant has a right to severance of the charges. Ind. Code § 35-34-1-11(a); Heinzman v. State, 895 N.E.2d 716, 720 (Ind. Ct. App. 2008). But if offenses are joined because they are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan, then the decision to sever multiple charges is a matter within the trial court's discretion. I.C. § 35-34-1-11(a); Heinzman, 895 N.E.2d at 720.

Here, the post-conviction court determined that Cameron's charges were based on a series of acts conducted together or constituting parts of a single scheme or plan. We cannot say that this decision was clearly erroneous. Cameron and his co-conspirators went on a crime spree over a period of hours. This was sufficient to join the charges under Indiana Code section 35-34-1-9(a)(2) and did not require severance of these charges. See Henson v. State, 707 N.E.2d 792, 796 (Ind. 1999) (defendant not entitled to severance of charges, which included kidnapping and murder, which took place over a two-day crime spree that were all part of an uninterrupted series of events); Waldon v.

8

State, 829 N.E.2d 168, 174-75 (Ind. Ct. App. 2005) (defendant not entitled to severance of joined charges where they were based on a series of burglaries committed over a span of a few days). The post-conviction court properly concluded that Cameron's post-conviction counsel was not ineffective for failing to move for severance.

## II. Appellate Counsel

Cameron also claims that his appellate counsel rendered ineffective assistance. When we review claims of ineffective assistance of appellate counsel, we use the same standard applied to claims of ineffective assistance of trial counsel. Harris v. State, 861 N.E.2d 1182, 1186 (Ind. 2007). That is, the post-conviction petitioner must show that appellate counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that but for the deficient performance of counsel the result of the proceeding would have been different. Id. Claims of ineffective assistance of appellate counsel generally fall into three categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. Reed v. State, 856 N.E.2d 1189, 1195 (Ind. 2006).

Here, Cameron claims that his counsel was ineffective for failing to claim on direct appeal that the admission of his co-conspirators' statements was fundamental error. To show that counsel was ineffective for failing to raise an issue on appeal, the defendant must overcome the strongest presumption of adequate assistance, and judicial scrutiny is highly deferential. Id. To evaluate the performance prong when counsel waived issues upon appeal, we apply the following test: (1) whether the unraised issues are significant and obvious from the face of the record and (2) whether the unraised issues are "clearly

stronger" than the raised issues. <u>Id</u>. If the analysis under this test demonstrates deficient performance, then we examine whether, "the issues which . . . appellate counsel failed to raise, would have been clearly more likely to result in reversal or an order for a new trial." <u>Id</u>. Our supreme court has repeatedly noted that we must consider the totality of an attorney's performance to determine whether the client received constitutionally adequate assistance and "should be particularly sensitive to the need for separating the wheat from the chaff in appellate advocacy, and should not find deficient performance when counsel's choice of some issues over others was reasonable in light of the facts of the case and the precedent available to counsel when that choice was made." <u>Id</u>. at 1196 (quoting <u>Bieghler v. State</u>, 690 N.E.2d 188, 194 (Ind. 1997)). Moreover, ineffective assistance is very rarely found in cases where a defendant asserts that appellate counsel failed to raise an issue on direct appeal because the decision of what issues to raise is one of the most important strategic decisions to be made by appellate counsel.

We emphasize that at the post-conviction hearing, it was Cameron's burden to establish his appellate counsel's ineffectiveness. Yet, at the hearing, Cameron failed to ask his appellate counsel why he did not raise a challenge to the admissibility of the statements of Cameron's co-conspirators. His counsel did testify, however, that it is often better to not raise a claim of fundamental error and instead present issues that were preserved for appeal.

As explained by our supreme court in <u>Delarosa v. State</u>:

> The fundamental error exception is extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the

10

defendant fundamental due process. The error claimed must either make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process. This exception is available only in egregious circumstances. This doctrine has been applied, for example, to review a conviction without proof of an element of the crime despite the lack of objection.

938 N.E.2d 690, 694-95 (Ind. 2010) (citations and internal quotations omitted). Given the substantial burden an appellant faces when presenting a claim of fundamental error, we cannot say that the decision of Cameron's appellate counsel not to present a claim of fundamental error with regard to the admission of the statements of his co-conspirators amounted to deficient performance. The fact that the issues his appellate counsel chose to present were unsuccessful does not establish ineffective assistance.

### Conclusion

The post-conviction court did not clearly err in concluding that Cameron failed to meet his burden of establishing that he received ineffective assistance of trial and appellate counsel.

Affirmed.

NAJAM, J., and BROWN, J., concur.