Charles Michael CHAMBERS, Appellant,

v.

STATE of Indiana, Appellee.

No. 178S8.

Supreme Court of Indiana:

Aug. 8, 1979.

Harriette Bailey Conn, Public Defender, Howard N. Bernstein, Deputy Public Defender, Indianapolis, for appellant.

Theo. L. Sendak, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

On December 9, 1975, defendant was found guilty by a jury of first degree murder in the Harrison County Circuit Court. Special Judge Max Apple sentenced the defendant to life imprisonment on December 19, 1975.

Defendant-appellant raises five issues for our review, as follows:

1. Whether the trial court erred in allowing into evidence defendant's statements and testimony regarding defendant's statements.

2. Whether the trial court erred in admitting into evidence State's Exhibit 2(b), a tape recording of defendant's statement of September 30, 1974.

3. Whether the trial court erred in sustaining the State's objection to questions propounded on cross-examination by defendant regarding pending unrelated criminal charges against a State's witness.

4. Whether the trial court erred in admitting into evidence certain photographs of the scene and of the body of the deceased.

5. Whether the evidence is sufficient to establish malice and premeditation.

The evidence demonstrated that Floyd Jordan and his wife operated a security business from their home. Mrs. Jordan monitored the police radio while her husband was on patrol. At approximately 3:00 a. m. on the morning of September 27, 1974, Floyd Jordan came across a suspicious vehicle at the Morgan School construction site. Jordan reported by radio to his wife that he was at Stop 656, the Morgan School Barrymore Construction site, and transmitted a license number and description of a car he observed at the stop. Mrs. Jordan made a written record of this conversation and switched to another radio channel which permitted her to monitor all communications at the scene over a police scanner radio. He stated that the car he found on the scene was a yellow-gold 1964 Ford Galaxie bearing license number 31 A 8942, and that the car was still warm. He further reported that there was gasoline running from a hose in the tank onto the ground and that he saw no one at the scene at that time. He was later heard to state on the radio that he had been shot.

Police officers investigating the incident found Mr. Jordan in his truck. He was dead, but was still holding the radio microphone in his hand. It appeared that he had been shot with a shotgun. The Harrison County coroner testified that Jordan had died as a result of three shotgun wounds. Near his body was found a piece of paper on which was written the license number given by Mr. Jordan in the radio conversation with his wife. This piece of paper matched the pages of a small notebook found on the seat next to the body. The license number was the number issued to the vehicle that belonged to defendant-appellant Chambers.

Wesley Mosier, a half-brother of the appellant, testified at trial that he and Chambers had gone to the Morgan School Construction site in the early morning hours of September 27, 1974, to steal gasoline. When they observed the vehicle approaching, he and Chambers ran and hid. Mosier ran into a field and heard first one and then two other gun shots. He returned to the car and found Chambers standing between the car and the security truck. Chambers said they should leave the area, so they left immediately. Mosier further testified that Chambers had had a shotgun in the trunk of his car when this incident began, and that the shotgun was in the back seat of the car when they left the scene.

I.

Appellant moved to suppress his statements and admissions to the police on the grounds that his statements were not voluntarily given and that he was not afforded his *Miranda* rights. The motion to suppress was overruled and several officers were permitted to testify at trial as to the statements and admissions made by Chambers.

At the motion to suppress hearing on December 1, testimony was taken from ten law enforcement officers and one probation officer.

Officer Kenneth Spencer testified that he advised defendant orally of all of his *Miranda* rights prior to, during and subsequent to his arrest at his home, but that these warnings were never reduced to written form nor attested to by Chambers. Spencer said that Chambers indicated to him that he understood his rights and that Chambers made no request for an attorney, or any other request based on the warnings presented to him. Officer Spencer's testimony was corroborated by other police officers. Chambers subsequently made statements to several of the officers indicating that he was involved in the incident and that he had, in fact, shot Jordan.

Officer Maxey, a State Police detective, testified that he interviewed the appellant on several occasions. After being advised of all of his *Miranda* rights, Chambers admitted to Maxey that he and Wesley Mosier were at the school site siphoning gasoline into a can, from which he would pour it into his automobile's fuel tank. He admitted he had his shotgun leaning against the car and shells for it in his pocket. When the Chevrolet truck driven by Jordan came into the construction site, both Chambers and Mosier ran and Chambers hid behind some piles of dirt. He loaded the shells into the gun and came out from hiding and moved toward the truck. The door of the truck was open and Jordan was sitting on the seat and shining a spotlight on Chambers. He stated that he thought Jordan had a gun in his hand so he, Chambers, pulled up and shot at Jordan with the shotgun. He heard Jordan say, "I've been shot," and he then kept going toward him, shooting him two times more. He then shouted for Mosier and told him they had to get out of there. He went to the truck, shut off the ignition and spotlight, took the keys and closed the door. He then attempted to find the spent shells on the ground to take them with him, but Mosier told him to leave them and get out of there immediately, and he did so.

During the first day of his arrest on September 27, appellant was taken before a Justice of the Peace on a preliminary charge filed against him. This was done within six hours of his arrest. Officer Lutgring testified that as he was taking Wesley Mosier to a cell in the jail, he passed appellant Chambers' cell. Chambers stated at that time that he wanted to talk about the incident to Officer Lutgring and told him that he did the shooting. The Officer told appellant that he did not want to talk and that Chambers should talk to Officer Maxey if he wished to say anything.

Wayne Buchinsky was the Harrison County Probation Officer and had known Michael Chambers for some two years. Shortly after his arrest on the morning of September 27, Chambers was given permission to call Wayne Buchinsky, and did call him that morning. He requested that Wayne Buchinsky be present at interrogations, and Buchinsky was present several times. Buchinsky heard the rights advisements given to Chambers by the police officers, and heard Chambers state that he understood his rights. Buchinsky also heard statements of admission made by the appellant. Mr. Buchinsky testified that he continually advised Chambers that anything Chambers told him would not be confidential. He warned appellant many times of his right to remain silent and of his right to have an attorney present, and requested that appellant not talk with him. He testified, however, that appellant insisted upon talking to him. On the evening of September 30, 1974, appellant Chambers made a full confession to Mr. Buchinsky, telling him the details of the incident, which were virtually the same as those related in Officer Maxey's testimony. On September 30, 1974, when the appellant made the statement to Officer Maxey, fully confessing to the details of this crime, a tape recording was made of this conversation and was admitted into evidence and played before the jury as State's Exhibit No. 2(B).

In *Richardson v. State*, (1978) Ind., 373 N.E.2d 874, 875, with respect to determining the adequacy of *Miranda* warnings and

the admissibility of confessions, this Court stated:

"The question of the admissibility of a confession is to be controlled by determining, from the totality of the circumstances, whether or not it was made voluntarily. *Works v. State*, (1977) Ind., 362 N.E.2d 144; *Ortiz v. State*, (1976) Ind., 356 N.E.2d 1188. The same test determines whether a waiver of the *Miranda* rights has occurred. *Ortiz, supra* ; *Nacoff v. State*, (1971) 256 Ind. 97, 267 N.E.2d 165. We review these questions on appeal as we do other sufficiency matters. We do not weigh the evidence, but rather determine whether there is substantial probative evidence to support the trial court's finding. *Murphy v. State*, (1977) Ind., 369 N.E.2d 411. This court will not ordinarily disturb a trial court's ruling as to the admissibility of a confession when that ruling is based on conflicting evidence. *Timm v. State*, (1976) Ind., 356 N.E.2d 222."

■ Defendant, at the time of his arrest, was a nineteen year-old, apparently normal young man. There was no evidence that he was threatened in any way by the police at his residence or at any time during his interrogations. Several officers testified that he appeared normal and calm at all times. During the interviews there were times when breaks were taken so that the defendant could have a cup of coffee or something to eat and that at no time did he complain or ask for anything, including, but not limited to, an attorney, or that the interrogation should stop. Although defendant did not sign a written waiver of rights, that fact is not determinative of the question of voluntariness of a confession. *Hill v. State*, (1978) Ind., 371 N.E.2d 1303; *Mack v. State*, (1978) Ind.App., 380 N.E.2d 592. There was ample evidence, which appellant did not deny, that the officer advised him several times of all of his *Miranda* rights and that he understood them and waived them. Appellant's statement given to Officer Lutgring was an unsolicited and volunteered statement, and the statement made to probation officer Buchinsky was made at the defendant's request. *Korn v.*

*State,* (1978) Ind., 379 N.E.2d 444; *Bugg v. State,* (1978) Ind., 372 N.E.2d 1156; *Murphy v. State,* (1977) Ind., 369 N.E.2d 411; *Riddle v. State,* (1976) 264 Ind. 587, 348 N.E.2d 635. The trial court committed no error in overruling the motion to suppress these statements and testimony regarding them and in allowing them into evidence.

## II.

■ State's Exhibit 2(B) was a tape recording of a statement made to Officer Maxey on September 30, 1974, in which Chambers made a full confession consistent with the facts and statements previously recited in this opinion. The court permitted the tape recording to be played to the jury. Our ruling in Issue I, above, applies equally to this exhibit. Furthermore, the tape itself establishes that the defendant was advised of his rights and voluntarily waived those rights. The defendant, however, raises an additional objection to this exhibit; he claims that the State did not lay a proper foundation for its admission. The record does not bear out the appellant's allegations in this regard. In his preliminary testimony, Officer Maxey clearly established the identity of the speakers on the tape. There is nothing in the record to show that the recording was confusing or was not clear and audible. There is only the bare statement of the appellant that *Lamar v. State,* (1972) 258 Ind. 504, 282 N.E.2d 795, required its exclusion. Officer Maxey testified that he kept the recording in his possession, care and custody until the trial, for all but a short period of time in which the prosecutor maintained possession. He obtained it from the prosecutor and presented it in court himself, testified that it was in the same condition at that time as it was when it was made. The court and counsel had previously agreed to the deletion of extraneous and irrelevant matter from the recording before it was heard by the jury. We therefore find no error in its admission into evidence.

## III.

■ Wesley Mosier testified as a witness for the State. Mosier did not actually

witness the shooting; however, his testimony virtually matched appellant's statements. He stated that while he was hiding in the field he heard one shot and then later heard two more. When the appellant removed the shotgun from the trunk he stated to Mosier, "If anyone tries to stop us we will shoot them." While Mosier came back to the scene the gun was already in the back seat of the car. The appellant had turned off the ignition and the spotlight of the truck and was attempting to find the spent shells on the ground. Mosier said he told Chambers to leave the shells and get out of there. On direct examination by the prosecutor, Mosier testified that he had a plea bargain arrangement with the State. He stated that, in return for his testimony at Chamber's trial, the State would allow him to plead guilty to a charge of involuntary manslaughter in the death of Mr. Jordan. In cross-examination, counsel for defense attempted to question the witness in regard to a charge he had pending on another unrelated case. There was no showing that the charges pending against Mosier in that case had anything to do with the plea agreement with the State involving his testimony and involvement in this case. The court properly sustained objections to said questions and answers. A witness cannot be impeached by proof of particular extraneous acts of misconduct which are not reduced to convictions. *Swan v. State,* (1978) Ind., 375 N.E.2d 198. *See Niemeyer v. McCarty,* (1943) 221 Ind. 688, 51 N.E.2d 365. The conduct of cross-examination is within the sound discretion of the trial court and will not be reversed unless there is an abuse of that discretion. *Murphy v. State,* (1977) Ind., 369 N.E.2d 411. The trial court did not abuse its discretion here in pending the cross-examination of Mosier as to other, unrelated pending criminal charges.

### IV.

State's Exhibits 9, 10, 11, and 12, are photographs of the scene which show the location of the victim's body in the truck, the nature and extent of the wounds received by him, the location of various articles in the truck, and the appearance of the interior as it appeared to the officers as they viewed it that morning. State's Exhibit 16 is a photograph of the interior of the truck after the body had been removed. It demonstrates fragments of flesh, blood and bone on areas of the interior of the cab. State's Exhibit 19 is a photograph of the body taken at the morgue, and is demonstrative of the nature and location of the wounds on the body. Appellant objects to these exhibits on the grounds that they are cumulative, gruesome, and repetitive, and prejudicially arouse the emotions of the jury. It is the State's position that these exhibits were identified by the witnesses who took them as being fair and accurate representations of the scenes they depict. The State further contends that these photographs show the nature and extent of the wounds received by the victim, the location of various articles in the truck, the direction from which the shotgun blast originated, and the force of the blast which is determinative of the range from which the shotgun was fired.

In *Wilson v. State,* (1978) Ind., 374 N.E.2d 45, 48, this Court discussed the admissibility of photographs, and stated:

"Admission of photographs is within the sound discretion of the trial court and will not be disturbed unless the trial court abused its discretion. To be admitted it must first be established that the photographs are a true and accurate representation of the things they are intended to portray. *Johnson v. State,* (1972) 258 Ind. 648, 283 N.E.2d 532. Their relevancy is determined by whether a witness would be permitted to describe verbally that which the photograph depicts. *Murphy v. State,* (1977) Ind., 369 N.E.2d 411. Although the photographs may depict gory, revolting or inflammatory details of the crime when presented to the jury, this is not a sufficient basis for excluding such evidence. *Sotelo v. State,* (1976) 264 Ind. 298, 342 N.E.2d 844; *Meredith v. State,* (1966) 247 Ind. 233, 214 N.E.2d 385.

The trial court did not abuse its discretion in admitting these exhibits. There is thus no error here.

## V.

Defendant does not dispute the sufficiency of the evidence as to the fact that he did shoot Mr. Jordan and cause his death. His argument, however, is that the evidence showed that he was scared and panicked and did not shoot Mr. Jordan with premeditated malice as the charge of first degree murder requires. Ind.Code § 35–13–4–1 (Burns 1975).

In reviewing a claim of insufficient evidence, this Court considers only the evidence most favorable to the State together with reasonable inferences to be drawn therefrom. *Roberts v. State,* (1978) Ind., 375 N.E.2d 215. Intent and malice may be inferred from the circumstances in evidence. *Webb v. State,* (1977) Ind., 364 N.E.2d 1016. The evidence showed that the defendant had the gun ready to be used in the event anyone should interrupt their stealing the gasoline. As he ran from the scene, noticing the approach of Jordan, he loaded the shotgun. He stated that when he came from behind the pile of dirt to approach the truck he thought Jordan had a gun in his hand. Jordan's gun was found in its holster on his body and the evidence showed that Chambers came toward the truck and shot Jordan. He heard Jordan say, "I've been shot," and he continued to approach Jordan, shooting him twice more. It is well settled that malice may be inferred from the use of a deadly weapon in a manner reasonably calculated to cause death or great bodily harm and also the purpose to kill may be inferred from the act of killing. Furthermore, it has been held that although the malice must be deliberated upon, premeditation may occur almost instantaneously. *Holt v. State,* (1977) Ind., 365 N.E.2d 1209; *Strickland v. State,* (1977) 265 Ind. 664, 359 N.E.2d 244. We feel there was sufficient evidence to establish premeditated malice.

Finding no reversible error, we affirm the trial court.

All Justices concur.