Waldo SHORT, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff below).

No. 49S00–8712–CR–1172.

Supreme Court of Indiana.

June 16, 1989.

Walter E. Bravard, Jr., Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant–Appellant Waldo Short was convicted following a jury trial in the Mar-

ion Superior Court Criminal Division V of Kidnapping, for which he received a sentence of fifty (50) years, Robbery, for which he received a sentence of twenty (20) years, Dealing in a Sawed-off Shotgun, for which he received a term of four (4) years, and Resisting Law Enforcement, for which he received a term of one (1) year, all sentences to run consecutively for a total of seventy-five (75) years.

Seven issues are presented for our review in this direct appeal, as follows:

1. whether the trial court erred in denying Short's motions for mistrial;

2. whether the trial court erred in giving a final instruction on flight;

3. whether there was sufficient evidence to support the verdict;

4. whether the trial court properly allowed the State's charging information to be furnished to the jury during deliberations;

5. whether there was a violation of speedy trial rule Ind.R.Crim.P. 4;

6. whether the prosecuting attorney systematically excluded blacks from the jury; and

7. whether Short was denied effective assistance of counsel.

The evidence shows that on October 5, 1983, the victim was at the Holidome in northwest Indianapolis with her husband, who was attending a building trades conference. The victim went to the parking lot to get their automobile while her husband talked to acquaintances. As she unlocked the car door, a man with a sawed-off shotgun came around the front of the car and faced her. He said, "Don't you move and don't you scream." When she screamed, he grabbed her, put his hand over her mouth, and pushed her into the front seat of the car on her face. She was aware two other people got into the vehicle and they drove off. She continued to struggle and one of the persons in the back seat put his hand over her mouth and pushed her down on the seat. He stated, "If you don't stop I'm going to kill you now." She felt something hard and cold on the back of her head and neck and realized it was a gun. She then stopped screaming and resigned herself to the situation.

The occupants of the vehicle took her purse and jewelry, then stopped the car at a field, got out, and told her to take off all her clothes, which she did. They then took her into the field, told her to lie down on her face and tied her hands and ankles together. After she heard them leave, she managed to get to her feet, loosened the bonds around her ankles and ran to the nearby Bent Tree apartments. She found a security guard who helped her and called the sheriff's department. From a photo array she was able to identify Montez Hutchinson as the man who had initially approached her in the Holidome parking lot. She had never seen the faces of the two people who accompanied him and got into the back seat of the car.

Later that evening, Officer Harry Forrestal, while off duty at a Village Pantry store, saw an automobile which matched the description of the one stolen from the victim earlier in the evening. He identified himself as a police officer and directed the occupants of the car to put their hands up and come out of the vehicle as they were suspects in a kidnapping and robbery. Alice Sweatt was a passenger in the vehicle, along with Montez Hutchinson, and appellant Waldo Short. Sweatt gave a statement in which she said Short, Hutchinson and she were on Northwestern Avenue near 86th Street. They went to a nearby lounge across the street from the Holidome—Holiday Lounge. Shirley Dean, the bartender there, saw all of them at the Lounge and corroborated Sweatt's testimony. Sweatt stated that she, Short and Hutchinson left the lounge at approximately 7:15 to 7:30, and went into the Holidome parking lot where they accosted the victim. She then gave a statement of the course of events, corroborating a statement the victim had given. She stated when the police officer at the Village Pantry told them to put up their hands because they were suspected in a kidnapping and robbery, Hutchinson said, "I can't go to jail no more. I am on probation." Short said, "No man I can't go either." It was at this point that Short started the car, got it in gear, and

took off. Sweatt said the officer fired shots at the car and one hit her in the hand.

## I

Short claims he was denied a fair trial and the trial court committed reversible error by denying his two motions for mistrial made after the State elicited testimony about his prior criminal record before he had taken the stand. He contends he was forced to take the stand to defend himself because of this damaging testimony. The testimony came in the form of a taped statement by Alice Sweatt, which was played to the jury without objection from Short. Short does not deny that he had a copy of the tape beforehand and knew what it contained. At the time it was offered into evidence and played to the jury, Short neither objected nor moved for redaction. Short later moved for a mistrial based on statements made by Sweatt that inferred Short had previously been involved in criminal activity. Objections not timely made at trial are not available on appeal. *Bedgood v. State* (1985), Ind., 477 N.E.2d 869, 872. Furthermore, the statements made by Short and his accomplice in Sweatt's presence were pertinent to show Short's knowledge that he intentionally fled after Officer Forrestal ordered him to stop, which related to the charge of resisting law enforcement. Even though they were damaging to Short in that they showed he previously had been involved in criminal activity, the probative value of these statements outweighed their prejudicial effect. Moreover, they were admissible as part of the *res gestae* of the event that necessarily tells the whole story and also come under the rule of "excited utterance." *Jones v. State* (1986), Ind., 500 N.E.2d 1166, 1169; *Salahuddin v. State* (1986), Ind., 492 N.E.2d 292, 294; *Teague v. State* (1978), 269 Ind. 103, 111, 379 N.E.2d 418, 422. As part of her testimony, Sweatt also referred to Short and Hutchinson's activities in looking about for places to commit the type of crime they committed at this scene. These statements also involved the total story of what the parties were doing on the night in question and how they came to commit this crime. Fur-

thermore, Sweatt's testimony was relevant to show Short's motive and intent in committing this crime on the theory of common scheme or plan. *Mason v. State* (1984), Ind., 467 N.E.2d 737. Short took the stand in his own behalf and testified concerning his past criminal activities, so references by Sweatt become no more than cumulative and less significant in their prejudicial effect. Short's claim he was forced to take the stand because of this testimony has little credibility since the record shows he testified he was in Chicago during the time this crime was committed. His alibi was not substantiated or corroborated by any of the witnesses. For all these reasons we see no error on this issue.

## II

Short claims the final instruction given by the court: "Avoidance of arrest by the defendant may be considered by you as evidence of guilty knowledge and upon the issue of guilt of the defendant," was not supported by the evidence. A flight instruction is proper where there is sufficient evidence to support the fact that flight occurred. *Roseberry v. State* (1980), 273 Ind. 179, 182–83, 402 N.E.2d 1248, 1251. Short argues the evidence is weak that he fled the State with knowledge of the presence of a warrant for his arrest. There was direct evidence before the jury that when he was approached by Officer Forrestal and informed he was a suspect in the instant crime, he started the car, threw it into gear and fled the scene. He later abandoned the car and avoided detection for over three years. There was more than sufficient evidence of flight to support the instruction and the trial court did not abuse its discretion in giving it to the jury. *Tanner v. State* (1984), Ind., 471 N.E.2d 665; *Roseberry, supra.*

## III

Short next contends there was insufficient evidence to convince the jury beyond a reasonable doubt of his guilt. Short's argument on this issue does nothing more than point out alleged inconsistencies, inviting us to question the credibility

of the witnesses and reweigh the evidence. This, of course, we will not do on appeal. *Fleck v. State* (1987), Ind., 508 N.E.2d 539.

Two of Short's accomplices testified that he was involved in these crimes. Their testimony was supported by Officer Forrestal. Short characterizes the testimony of Alice Sweatt as inconsistent and incredibly dubious. He points out inconsistencies in her testimony with that of some of the other witnesses. We do not assess these inconsistencies as making Sweatt's testimony incredibly dubious. They were inconsistencies that might be expected in the testimony of witnesses in a jury trial. There is no showing here of insufficient evidence to merit reversal.

### IV

■ The trial court proposed to counsel that he was going to send the charging informations with the verdict forms to the jury. Short objected on the grounds the charging instruments would be just another reminder he was charged with the crime and would only tend to emphasize that fact further. On appeal, Short seems to say it was improper to send the charging instruments to the jury since they were not advised the charges were not evidence. This appears to be a different ground than that raised at trial, and therefore, there is merit to the State's contention the issue has been waived. *Bedgood,* 477 N.E.2d at 872. However, the record shows the trial court did, in fact, advise the jury in preliminary instruction number 4: "The fact that the defendant has been arrested and a formal charge has been filed is not any evidence of guilt." It was proper procedure for the trial court to furnish the jury with a copy of the charges along with the possible verdicts they might reach. *Thomas v. State* (1972), 259 Ind. 537, 289 N.E.2d 508; *Payton v. State* (1982), Ind.App., 430 N.E.2d 1175, 1180.

### V

■ On May 20, 1987, Short filed a motion for early trial pursuant to Ind.R.Crim.P. 4. Trial actually commenced on August 6, 1987, seventy-seven (77) days from the filing

of the motion. Short now claims reversible error is shown in that he was not brought to trial within seventy (70) calendar days pursuant to Ind.R.Crim.P. 4(B)(1). Short does not show he ever filed a motion for relief under this rule prior to going to trial on August 6, 1987. Further, the record shows the trial court set the August 6 date on the day Short requested a speedy trial. The court did so by an order which recited the trial court's finding that the established date was the earliest available date for a jury trial. Short made no objection at that time that the trial was set beyond the seventy day period. For all these reasons, Short presents no issue for review. *Smith v. State* (1985), Ind., 477 N.E.2d 857, 861–62.

### VI

■ Short claims his convictions cannot stand because there was a systematic exclusion of blacks from the jury by the prosecutor during *voir dire.* There is nothing to support this contention other than Short's bare statement. Appellate counsel states in his brief that a transcript of the *voir dire* examination of the jury does not reveal the racial characteristics of the jurors struck by either side and the jury questionnaires and peremptory challenge sheets do not contain any information on the racial background of the jurors. Moreover, appellant's defense counsel points out that a reading of the transcript of the *voir dire* examination does not reveal any objection by defense trial counsel and the jury was accepted by both the State and the defense without comment. No issue is presented for our review.

### VII

■ Finally, Short filed a *pro se* motion for leave to amend brief along with an amended brief in which he argues that he was denied effective assistance of counsel and that this alleged ineffective assistance constituted fundamental error. Short claims his trial counsel failed to adequately investigate and present Short's alibi defense, did not subpoena any witnesses or documents to support his alibi, and told

him, with the exception of witnesses, there was no way to subpoena such evidence. However, Short fails to set forth which witnesses were not subpoenaed or what they would have said to corroborate his alibi testimony. Furthermore, he fails to enumerate which documents, if any, would support his alibi. Short names no witnesses and lists no documents in support of his claim that there was additional evidence to corroborate his alibi testimony. Short next claims his trial counsel failed to object to the admission of a reversible jacket worn by Montez Hutchinson, but does not explain how this resulted in a denial of effective assistance to warrant reversal.

To establish a claim of ineffective assistance of counsel, a defendant must first show that his attorney acted in a professionally unreasonable manner. Second, the defendant must show the attorney's unreasonable conduct prejudiced his case. The defendant must also overcome, with strong and convincing evidence, the presumption that his counsel was competent. Moreover, the defendant must satisfy this Court on appeal that the evidence as a whole leads unmistakably and unerringly to the conclusion that defendant's trial counsel afforded ineffective assistance of counsel. *See McCraney v. State* (1987), Ind., 508 N.E.2d 798 and cases cited therein. Short has failed to do so.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER and GIVAN, JJ. concur.

DICKSON, J., concurs in result without opinion.