**Donald F. SAUNDERS, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 03A01–9004–CR–164.**

Court of Appeals of Indiana, First District.

Nov. 13, 1990.

Karon E. Perkins, Dalmbert, Marshall & Perkins, An Ass'n of Lawyers, Columbus, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Judge.

A jury found Donald F. Saunders guilty on March 6, 1987 of two counts of dealing in cocaine as class A felonies, one count of dealing in a schedule I controlled substance

(LSD) as a class B felony, two counts of conspiracy to commit dealing in cocaine as class A felonies, and one count of conspiracy to commit dealing in a schedule I controlled substance (LSD) as a class B felony. The trial court sentenced Saunders to the presumptive terms of thirty (30) years for each class A felony and of ten (10) years for each class B felony and ordered all sentences to be served consecutively for a total of one hundred forty (140) years. Saunders appeals these convictions and sentences and appeals from the procedures followed at trial; however, he raises no issue which merits reversal.

The evidence reveals that Ronald and Theresa Gibbs allowed Saunders to live in their home until they discovered he was growing marijuana plants there. Soon after they asked him to leave, Ron found a prescription vial, which had belonged to his wife, in an alley near their home. The vial contained a residue of white powder, and Ron turned it over to the police. The label had been removed from the vial, and Theresa found it behind a dresser in the room which Saunders had occupied. Saunders was the last person seen in the alley where Ron found the vial.

The police tested the white residue and found it to be cocaine. A white powder found on a small bowl in what had been Saunders' room was later determined to be a controlled substance. Based upon this information, Sergeant Knulf asked Ron to become a confidential informant. Ron agreed to make controlled buys from Saunders but refused to be compensated for the work.

On April 14, 1986, Ron informed Saunders he had a friend who would willingly purchase cocaine supplied by Saunders, who replied he could supply whatever amount was needed. Saunders quoted prices and amounts and even provided a handwritten schedule to Ron. The two then agreed to meet the next day.

On April 15, Ron met with Saunders and wore a body transmitter so the transaction could be recorded by the police. Saunders again provided a schedule of prices and amounts, but they exchanged no drugs or money. However, the next day, Ron gave Saunders $600.00 to purchase cocaine, which Saunders delivered to Ron later that night.

On April 24, Ron again met Saunders and gave him $50.00 to purchase a sample of LSD, which was to be delivered the next day. Saunders met with Ron the next day and produced three tablets of LSD. Ron again wore a body transmitter to permit recording of the transaction, and the police also recorded the meeting on a videotape. At that time, Ron gave Saunders $700.00 to purchase more cocaine, which was to be delivered later that day. Saunders delivered the cocaine to Ron later that evening, and the police arrested him outside of Ron's home.

After his arrest, Saunders gave the police a statement in which he admitted he had taken money from Ron to buy cocaine and LSD. He admitted he had delivered LSD to Ron but denied he had delivered any cocaine.

## I.

Was Saunders denied his right to a speedy trial when he was not tried within seventy days after he filed his motion for an early trial?

The record reveals the following relevant dates.

| | |
|---|---|
| June 11, 1986 | motion for early trial [70th day: August 20, 1986] |
| June 17, 1986 | trial set for August 12, 1986 |
| July 25, 1986 | Saunders orally requests change of counsel; new counsel appointed |
| July 31, 1986 | counsel requests continuance and files new motion for early trial [70th day: October 9, 1986] |
| August 4, 1986 | trial set for October 7, 1986 |
| August 18, 1986 | counsel moves to withdraw |
| August 22, 1986 | new counsel appointed |
| September 15, 1986 | new counsel appointed |
| September 26, 1986 | counsel requests continuance for preparation |
| September 30, 1986 | trial reset for December 2, 1986 |
| October 27, 1986 | counsel moves to withdraw |
| November 14, 1986 | original counsel reappointed |
| November 19, 1986 | counsel requests continuance |
| November 26, 1986 | Saunders files pro se motion to dismiss due to 70-day rule violation |

| December 19, 1986 | counsel moves to withdraw |
| December 30, 1986 | Saunders files pro se motion for early trial; [70th day: March 10, 1987]; December 19 motion to withdraw denied; trial reset for March 3, 1987 |
| January 8, 1987 | Saunders files pro se motion to dismiss |
| February 19, 1987 | motion to dismiss denied |
| February 27, 1987 | counsel moves to withdraw |
| March 3, 1987 | motion to withdraw denied; trial begins |

■ If any defendant, held in jail on an indictment or an affidavit, shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such ˙motion, except where a continuance within that period is had on his motion or the delay is otherwise caused by his act. Ind.Crim. Rule 4(B)(1). The acts of an attorney under this rule are attributed to the client. *Vaughan v. State* (1984), Ind.App., 470 N.E.2d 374, *trans. denied.* Delay caused by a change of counsel will be charged to a defendant where actual delay results. *Biggs v. State* (1989), Ind.App., 546 N.E.2d 1271.

■ In addition, the movant under this rule must maintain a position which is reasonably consistent with the request he has made. Failure at any point to do so constitutes an abandonment of the request, and the motion by which it was made ceases to have legal viability. *Rutledge v. State* (1981), Ind., 426 N.E.2d 638. Therefore, the filing of a subsequent motion for early trial is deemed an abandonment of any previous motion because it is inconsistent with the previous request. *Id.*

■ In this case, all acts of counsel for Saunders are attributable to him. On June 11, 1986, he moved for an early trial. The 70th day would have been August 20, 1986; and the trial court set trial for August 12, 1986, within the 70-day limit. Saunders himself subsequently requested a change of counsel, and the trial court granted the request. New counsel requested a continuance and filed a new motion for early trial on July 31, 1986, that is, within the previous 70-day limit. This new request for an early trial was inconsistent with Saunders' previous request and constitutes an abandonment of that request. The new 70-day limit thus ended on October 9, 1986; and the new trial date set for October 7, 1986 was within this period.

In August and September of 1986, counsel for Saunders changed several times due to conflicts with his case. New counsel requested a continuance for preparation of the case on September 26, 1986, that is, within the then current 70-day limit; and trial was set for December 2, 1986, which was beyond the 70-day period set to end on October 9, 1986.

■ A defendant has no duty to object to the setting of a belated trial date when the act of setting such date occurs after the Crim.R. 4 time expires such that the court cannot reset the trial date within the time allotted by the rule. *Morrison v. State* (1990), Ind., 555 N.E.2d 458. However, if the defendant sits idly by at a time when the court could yet grant him a trial within the proper period and permits the court, without objection, to set a date beyond that period, he will be deemed to have acquiesced therein. *Little v. State* (1981), 275 Ind. 78, 415 N.E.2d 44. Here, Saunders not only requested a continuance through counsel but failed to object to the trial date outside the 70-day limit at a time when the trial court could have set the date within that limit. We conclude Saunders acquiesced in the December 2, 1986 trial date.

Through counsel, Saunders subsequently moved for a continuance of the December 2, 1986 trial date in order to prepare for trial. In addition, Saunders filed a *pro se* motion to dismiss for violation of the 70-day early trial period; and counsel for Saunders moved to withdraw. On December 30, 1986, Saunders filed another *pro se* motion for an early trial. On the same date, the trial court scheduled a hearing on the pending motions for January 23, 1987 and set the jury trial for March 3, 1987.

■ The motion for continuance of the December 2, 1986 trial date is attributable to Saunders. He is responsible for the delay past the December 2, 1986 trial date at least until December 30, 1986, when the

trial court set a hearing on his pending motions and when Saunders filed his *pro se* motion for an early trial. This motion for an early trial again set the 70–day limit for an early trial running, and the limit would expire on March 10, 1987. The trial was held on March 3, 1987, within the 70–day limit.

We note a certain amount of tension between this early trial issue and Saunders' claim he was denied his right to counsel in issue VII of this decision. *See generally*, 16 A.L.R.4th 1283. However, the right to assistance of counsel includes, as a necessary corollary, the right to adequate time for preparation. *Jones v. State* (1978), 175 Ind.App. 343, 371 N.E.2d 1314. Moreover, Saunders orally requested a change of counsel in the first instance and therefore set in motion the chain of events which caused him to repeatedly require new counsel when conflicts arose. *State ex rel. Cox v. Super. Ct., Madison Cty.* (1983), Ind., 445 N.E.2d 1367. Any delay was for his benefit and was intended to insure him his constitutional rights. The chain of events was not complete until the day of trial when the trial judge refused to allow withdrawal of the same counsel Saunders had been appointed in the first place. The delay occasioned by these circumstances is attributable to Saunders. *Gross v. State* (1972), 258 Ind. 46, 278 N.E.2d 583. We therefore conclude Saunders was not denied his early trial right.

## II.

Is the evidence sufficient to support Saunders' convictions despite his assertion of the defense of entrapment?

When this Court reviews a claim that the evidence is insufficient to support conviction, it will not reweigh evidence which was presented to the trier of the facts. The Court also will not judge the credibility of the witnesses presented at trial. Rather, the Court will consider only that evidence favorable to the verdict, together with all reasonable inferences which flow from that evidence, to determine whether the conviction is supported. If substantial evidence of probative value exists to support the

verdicts entered below, this Court will not reverse Saunders' convictions. *Harwood v. State* (1990), Ind.App., 555 N.E.2d 513.

Indiana allows a defendant to assert an entrapment defense under Ind.Code 35–41–3–9:

(a) It is a defense that:

(1) the prohibited conduct of the person was the product of a law enforcement officer, or his agent, using persuasion or other means likely to cause the person to engage in the conduct; and

(2) the person was not predisposed to commit the offense.

(b) Conduct merely affording a person an opportunity to commit the offense does not constitute entrapment.

When evidence exists that a police officer or an agent has participated in the purchase of a controlled substance, the State must present evidence which shows the accused is predisposed to commit the criminal act in question in order to prove that the act was not solely the idea of the police. If the police merely afforded the accused an opportunity to commit the crime, he cannot rely upon the defense of entrapment. *Silva v. State* (1980), Ind. App., 410 N.E.2d 1342.

Here, the State presented sufficient evidence to rebut an entrapment defense. Saunders approached Ron before Ron became an informant and asked him to participate in the transportation of drugs across state lines. During his meetings with Ron, Saunders showed his familiarity with drug prices and amounts and provided Ron with handwritten price schedules. Saunders negotiated the transactions with Ron, promised to quickly deliver the contraband, and in fact delivered the drugs no later than the day after each meeting. During the several meetings, Saunders never expressed an interest in discontinuing his relationship as seller to Ron.

The evidence is sufficient to show Saunders was predisposed to commit these offenses. He may not now complain he was entrapped, because he took advantage of a situation in which the police merely afford-

ed him the opportunity to commit the crimes in question.

### III.

Did the trial court erroneously deny Saunders' motion to suppress self-incriminating statements and then erroneously admit those statements into evidence without authentication by their transcriber?

As noted above, Saunders gave a taped statement to the police after his arrest and admitted he had taken money from Ron to buy cocaine and LSD. He admitted he had delivered LSD to Ron but denied he had delivered any cocaine. At trial, Saunders moved to suppress State's Exhibit # 12, the transcript produced from the tape, because it had not been properly authenticated by the secretary who had transcribed it. The trial judge reserved admission of the transcript until the secretary could be produced to authenticate the accuracy of the transcript.

 Saunders now complains that the transcript should not have been admitted because the statements were involuntarily given and because it was unauthenticated. However, as the State correctly responds, the transcript was never admitted or provided to the jury. While the transcript was made part of the probable cause affidavit, there is no indication the jury ever saw the statements given by Saunders in written form.

It is only when an error has caused prejudice that the cause will be reversed. *Gambill v. State* (1985), Ind., 479 N.E.2d 523. The jurors could not have been mislead by any inaccuracies in the unauthenticated transcript because the transcript was never tendered to them. The transcript could not have prejudiced Saunders, and he is not entitled to reversal on this issue.

In addition, during the hearing on Saunders' Motion to Suppress, the State offered to play State's Exhibit # 13, a cassette tape of the statement given by Saunders from which the transcript was made, but Saunders also opposed admission of the tape

itself at that time. Saunders' objection addressed the voluntariness of the statement and the audibility of the tape. The trial judge admitted the tape for a limited purpose, to determine whether Saunders had voluntarily given the statement to the police. Counsel for Saunders stated the defense had no objection to the admission of the tape for that limited purpose.

The trial court then reviewed the tape and denied Saunders' Motion to Suppress. The trial judge stated he could detect no involuntariness or intimidation with regard to the taped statement. Based upon the outcome of the hearing on Saunders' Motion to Suppress, the State sought admission of the tape at trial. The trial court allowed the State to play the tape for the jury over Saunders' objection. Thereafter, the State played the entire taped statement from Saunders for the jury.

 Saunders has not specifically argued in his brief that the trial court improperly admitted the actual tape of the statement given to the police. This Court will not review issues which were not argued in Saunders' brief. *Smith v. State* (1985), Ind., 475 N.E.2d 1139. By his failure to allege reversible error in the admission of the tape, which was played for the jury, Saunders has implicitly accepted its admission as proper.

 Thus, the jury heard the statements made by Saunders to the police. The tape was the source of the material contained in the transcript about which Saunders now complains. On appeal, Saunders does not claim the trial court improperly admitted the tape for the jury's consideration. The contents of the tape are cumulative of the contents of the allegedly improper transcript. Evidence improperly admitted, but cumulative in nature, does not require a reversal of the cause. *Hazzard v. State* (1980), 274 Ind. 679, 413 N.E.2d 895. Even if the transcript were improperly admitted, Saunders has not shown he was prejudiced by its contents. He is therefore not entitled to reversal on this issue.

## IV.

Did the trial court erroneously admit certain tape recordings over Saunders' objection that portions of the tapes were unintelligible?

Saunders complains about the admission of State's Exhibit # 14 and State's Exhibit # 15. These exhibits are cassette tapes which contain conversations between Saunders and Ron Gibbs as the two negotiated the conditions of their drug transactions. Saunders claims portions of the tapes are unintelligible and the trial court should have excluded them.

The record reveals that the trial judge began to play State's Exhibit # 14 for the jury; and, after an amount of conversation which does not even constitute one page of the record of proceedings, counsel for Saunders objected to the tape due to its low quality. The trial judge sustained the objection because he had only understood a few words of the conversation. He then admonished the jury to disregard the tape and ordered the State to move on to the next recording.

Prejudice cannot have occurred when the jury was never exposed to the evidence which allegedly caused it. *Wade v. State* (1986), Ind., 490 N.E.2d 1097. Moreover, if a jury is admonished by the trial court to disregard what has occurred at trial, or if other curative measures are taken, no reversible error will ordinarily be found. *Ramos v. State* (1982), Ind., 433 N.E.2d 757. Here, the trial court stopped the tape after a few sentences had been played to the jury. Saunders obviously could not have been prejudiced by conversations on the portion of the tape which came after that point because the jury did not hear them. Also, the trial judge promptly admonished the jurors to disregard that brief portion of the tape they had heard; and Saunders has not shown this admonishment was inadequate to preserve the fairness of the trial.

Moreover, the State correctly notes that Saunders has failed to include the tapes in the record of proceedings. To exercise his right to appeal, Saunders was required to present a complete record for this Court. *Seay v. State* (1988), Ind., 529 N.E.2d 106. Without the State's Exhibits # 14 and # 15, we are unable to review Saunders' claim that the tapes are unintelligible.

However, the trial judge noted the very early part of State's Exhibit # 15 was somewhat unintelligible but the tape became intelligible as it continued to play. Trial courts possess wide discretion to determine whether audio recordings are of such clarity to be intelligible and enlightening to the jury. *Resnover v. State* (1984), Ind., 460 N.E.2d 922, *cert. denied*, 469 U.S. 873, 105 S.Ct. 231, 83 L.Ed.2d 160. Other than Saunders' bare assertion that the tape is unintelligible, there is nothing in the record to show that the recording was confusing or was not clear and audible. *Chambers v. State* (1979), 271 Ind. 357, 392 N.E.2d 1156. We find no reversible error here.

## V.

Did the trial court erroneously convict and sentence Saunders of three separate counts of conspiracy when only one agreement existed?

Saunders received convictions for three counts of conspiracy to commit a felony: two counts of conspiracy to commit dealing in cocaine and one count of conspiracy to commit dealing in a schedule I controlled substance. On appeal, Saunders claims each conspiracy centered on the same set of events.

A person conspires to commit a felony when, with intent to commit the felony, he agrees with another person to commit the felony. The State must allege and prove that either the person or the person with whom he agreed performed an overt act in furtherance of the agreement. Ind.Code 35-41-5-2. The requisite elements of the offense are 1) the intent to commit a felony, 2) an agreement with another person to commit the felony, and 3) an overt act in furtherance of that agreement. *Whittle v. State* (1989), Ind., 542 N.E.2d 981.

 A person can be convicted of conspiracy although the person with whom he conspired only feigned acquiescence in the plan. *Garcia v. State* (1979), 271 Ind. 510, 394 N.E.2d 106. Therefore, Saunders' convictions may be upheld even though Ron did not intend to follow through with the criminal plan.

 A single agreement to commit several unlawful acts cannot be punished by multiple convictions under a general conspiracy statute. *Mftari v. State* (1989), Ind., 537 N.E.2d 469. A determination of whether more than one agreement existed between the conspirators rests upon consideration of several factors: the nature of the criminal scheme, the common participants, the proximity in time, and the conspirator's involvement in each crime. *Id.* However, whether there is one conspiracy or several is a question for the jury. *Ridgeway v. State* (1981), Ind.App., 422 N.E.2d 410. The jury in this case determined that Saunders was guilty of three conspiracies. Our task is to determine whether the evidence is sufficient to show Saunders entered into three distinct conspiratorial agreements to commit three separate drug offenses. The State correctly contends it does.

 On April 14, 1986, Ron informed Saunders he had a friend who would willingly purchase cocaine supplied by Saunders. Saunders replied he could supply whatever amount was needed. He quoted prices and amounts and even provided a handwritten schedule to Ron. The two then agreed to meet the next day. On April 15, Saunders met with Ron and again provided a schedule of prices and amounts, but they exchanged no drugs or money. However, the next day, Ron gave Saunders $600.00 to purchase cocaine, which Saunders delivered to Ron later that night.

This evidence is sufficient to show Saunders conspired to commit dealing in cocaine, which is a felony under Ind.Code 35–48–4–1. Saunders conspired to commit the felony of dealing in cocaine in that he agreed with Ron Gibbs to commit that offense when he had the specific intent to commit it. Saunders then performed an overt act in furtherance of the agreement when he took money from Ron and delivered the cocaine to him.

 On April 24, Ron again met Saunders and gave him $50.00 to purchase a sample of LSD, which was to be delivered the next day. Saunders met with Ron the next day and produced three tablets of LSD. This evidence is sufficient to show Saunders conspired to commit dealing in LSD, a schedule I controlled substance, which is a felony under Ind.Code 35–48–4–2 and Ind.Code 35–48–2–4(d)(12). The agreement to deal in LSD was sufficiently independent in its nature, time, and involvement to constitute a separate element of a distinct conspiracy. Saunders conspired to commit the felony of dealing in LSD in that he agreed with Ron Gibbs to commit that offense when he had the specific intent to commit it. Saunders then performed an overt act in furtherance of the agreement when he took money from Ron and delivered the LSD to him.

Also on April 25, Ron gave Saunders $700.00 to purchase more cocaine, which was to be delivered later that day. Saunders delivered the cocaine to Ron later that evening, and the police arrested him outside of Ron's home. Once again, this evidence is sufficient to show Saunders conspired to commit dealing in cocaine, a schedule I controlled substance. This subsequent agreement to deal in cocaine was sufficiently independent in its nature, time, and involvement to constitute a separate element of a distinct conspiracy from either of the previous conspiracies. Here also, Saunders conspired to commit the felony of dealing in cocaine in that he agreed with Ron Gibbs to commit that offense when he had the specific intent to commit it. Saunders then performed an overt act in furtherance of the agreement when he took money from Ron and delivered the cocaine to him. Saunders' convictions and sentences with regard to the three conspiracies are therefore proper.

### VI.

Did the trial court improperly determine that the sentences imposed upon Saunders should be served consecutively?

As noted above, a jury found Donald F. Saunders guilty of two counts of dealing in cocaine as class A felonies, one count of dealing in a schedule I controlled substance as a class B felony, two counts of conspiracy to commit dealing in cocaine as class A felonies, and one count of conspiracy to commit dealing in a schedule I controlled substance as a class B felony. The trial court sentenced Saunders to the presumptive terms of thirty (30) years for each class A felony and of ten (10) years for each class B felony and ordered all sentences to be served consecutively for a total of one hundred forty (140) years.

■■■ Saunders claims the trial court improperly determined that Ind.Code 35–50–1–2 required the sentences to be served consecutively. The second subsection of that statute provides circumstances under which consecutive sentences are mandatory. An exhaustive explanation of those circumstances is unnecessary to determine the results of this issue. The trial court never mentioned that subsection of the statute when it imposed the consecutive sentences, and the court never indicated the imposition of consecutive sentences was anything but voluntary.

■■■ The first subsection of the statute requires the trial court to determine whether the terms of imprisonment shall be served concurrently or consecutively. Ind.Code 35–50–2–1(a). The trial judge stated quite clearly that he considered the consecutive sentences appropriate because Saunders had committed the offenses while on parole, which is a proper aggravating factor. *Newman v. State* (1985), Ind., 483 N.E.2d 36. The trial judge also noted Saunders' long history of criminal activity, which showed lack of respect for the law and a great risk of repeated criminal activity. In light of the fact that the sole factor of Saunders' criminal record is sufficient to support an enhancement of his sentence, this Court cannot say the trial judge improperly imposed consecutive sentences upon him. *Schwass v. State* (1990), Ind., 554 N.E.2d 1127.

## VII.

Was Saunders denied the right to counsel?

Saunders claims he was effectively denied his right to be represented by counsel during the proceedings below. The record reveals he had several appointed trial attorneys but eventually proceeded to trial with the first attorney who had been appointed to him. The intervening attorneys had moved to withdraw due to conflicts of interest with Saunders' case. He attempts to bolster his assertion with claims that discovery matters were not addressed, he was unprepared to defend himself at trial, and he had a conflict with counsel who eventually represented him at trial.

The record reveals that Mr. Arnholt, who ultimately represented Saunders at trial, in fact moved for discovery before he withdrew from the case at Saunders' request early in the case. On the same day Saunders requested change of counsel, the trial judge appointed Mr. Monroe to represent him. Mr. Arnholt moved to withdraw from the case six days later.

Mr. Monroe subsequently moved to withdraw his appearance due to a conflict with Saunders' case, and the trial court ordered Saunders to appear for appointment of new counsel. The trial court withdrew the appearance of Mr. Monroe and appointed Mr. Dickherber as new counsel on the same day. Three weeks later, the trial court was informed that Mr. Dickherber also had a conflict with Saunders' case. He withdrew his appearance, and the trial judge appointed Mr. Tucker as new counsel on the same day. Mr. Tucker also moved for discovery on Saunders' behalf. Mr. Tucker subsequently moved to withdraw his appearance due to a conflict with Saunders' case, and the trial court reappointed Mr. Arnholt as counsel for Saunders nine days later.

Although the attorneys for Saunders may not have had appearances on file with the trial court at all times, the record shows Saunders had been represented by appointed counsel except for a period of nine days, from his arrest in April until Mr. Arnholt was reappointed in November. The record does not show that any proceed-

ings were held during this time. In addition, Saunders twice moved for discovery through counsel and points to no beneficial matter which the discovery failed to produce. He also has not shown in what manner he was inadequately prepared to defend the charges against him nor how having had one attorney to represent him from his arrest to the trial would have remedied that situation. In addition, if Mr. Arnholt were so unacceptable to Saunders, he could have taken advantage of an alternative to court appointed counsel and either attempted to retain his own counsel or proceeded *pro se. Seay v. State* (1990), Ind., 550 N.E.2d 1284. Instead, Saunders ultimately acquiesced in the appointment of Mr. Arnholt, his first and last trial attorney.

Not every lapse in representation, however brief and inconsequential, deprives a criminal defendant of his right to counsel. If the lapse does not prejudice the defendant in defending himself against the criminal charges, it does not justify nullifying his convictions. *Young v. Duckworth* (7th Cir.1984), 733 F.2d 482. We see no actual prejudice here, and we do not conclude that Saunders was in any way deprived of his right to counsel.

## VIII.

Was Saunders denied effective assistance of counsel?

To establish a claim of ineffective assistance of counsel, Saunders must first show that his attorney acted in a professionally unreasonable manner. Second, he must show the attorney's unreasonable conduct prejudiced his case. Saunders must also overcome, with strong and convincing evidence, the presumption that his counsel was competent. *Short v. State* (1989), Ind., 539 N.E.2d 939. Prejudice is established upon a showing that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Rozika v. State* (1988), Ind., 520 N.E.2d 1267.

This Court will not speculate about what may have been the most advantageous strategy in a particular case. Iso-

lated poor strategy, inexperience, or bad tactics do not necessarily establish ineffective assistance of counsel. *Id.* In addition, Saunders must satisfy this Court that the evidence as a whole leads unmistakably and unerringly to the conclusion that his trial counsel rendered ineffective assistance. *Short, supra,* 539 N.E.2d 939.

Saunders claims counsel rendered ineffective assistance in several respects. He first alleges counsel failed to seek a continuance after the trial court granted the State's motion to amend certain counts in the informations. The trial judge allowed the amendments, which increased by one day the dates on which the offenses were alleged to have occurred. The trial judge noted that the initial informations alleged the crimes occurred "on or about" April 24, and that phrase certainly included the following day, which the State sought to include in its amendment. The trial judge reasoned that Saunders would not be prejudiced by the amendment under those circumstances.

An information which charges the commission of an offense may be amended on motion by the prosecuting attorney at any time because of any immaterial defect, including the failure to state the time at which the offense was committed, where the time is not of the essence of the offense, and including any defect which does not prejudice the substantial rights of the defendant. Ind.Code 35–34–1–5(a)(7) & (9). Where time is not of the essence of the offense, an amendment of the indictment, as to the time of the offense, would be an amendment as to form only. *Herman v. State* (1965), 247 Ind. 7, 210 N.E.2d 249, *cert. denied,* 384 U.S. 918, 86 S.Ct. 1364, 16 L.Ed.2d 439. In addition, an information may be amended on a motion by the prosecutor at any time, if the amendment is necessary because of an immaterial defect, as long as the defendant is accorded an adequate opportunity to address the changes. *Witte v. State* (1990), Ind., 550 N.E.2d 68.

Here, the trial judge correctly found the amendment merely addressed the form of the allegation and not its sub-

stance. The initial informations alleged the crimes occurred "on or about" April 24, and that phrase certainly included the following day, which the State sought to include in its amendment. Saunders has not convinced us that he was unable to prepare his defense in light of the amendment. The procedures used accorded Saunders an adequate opportunity to address the charges and did not deprive him of any available defense or strategy. Saunders does not claim, and the record does not show, he was misled or was prevented in any manner from making his defense by reason of the amendment. He has therefore not shown any prejudice arising from the amendment and likewise has not shown how the failure to move for a continuance, in light of the amendment, prejudiced his case. We conclude the proceeding would have had the same result had counsel moved for the continuance, and the evidence as a whole does not lead unmistakably and unerringly to the conclusion that Saunders' trial counsel rendered ineffective assistance.

■■■ Saunders next claims trial counsel rendered ineffective assistance when he failed to follow up on his objection to the admission of the transcript discussed in section III of this decision. Our discussion in that section observed that Saunders moved to suppress State's Exhibit # 12, the transcript produced from the tape, because it had not been properly authenticated by the secretary who had transcribed it. The trial judge reserved admission of the transcript until the secretary could be produced to authenticate the accuracy of the transcript. However, the transcript was never admitted or provided to the jury. There is no indication the jury ever saw the statements given by Saunders in written form. We conclude the transcript could not have prejudiced Saunders, and therefore any failure to follow up on the objection to the transcript was harmless to his case. We conclude the proceeding would have had the same result had counsel readdressed the transcript issue, and the evidence as a whole does not lead unmistakably and unerringly to the conclusion that Saunders' trial counsel rendered ineffective assistance.

■■■ Saunders next claims trial counsel failed to adequately investigate the case and prepare for trial. He states it is illogical for counsel to have offered the affirmative defense of entrapment but then to have advised him to claim his Fifth Amendment privilege against self-incrimination on the witness stand. However, we will not speculate about what may have been the most advantageous strategy in a particular case. Isolated poor strategy, inexperience, or bad tactics do not necessarily establish ineffective assistance of counsel. *Rozika, supra*, 520 N.E.2d 1267. We agree with the State that it is not illogical for his attorney to counsel Saunders to assert his Fifth Amendment privilege when the prosecutor asked him repeatedly, for each count, whether he was guilty of the charges against him. Saunders' entrapment defense would have retained little weight in the mind of the jury had Saunders taken the stand and admitted his guilt on all charges. Counsel's advice was reasonable.

■■■ Saunders further alleges that counsel failed to take depositions and had to ask Saunders what questions to ask trial witnesses. However, Saunders fails to show how this pretrial preparation would have aided his defense. He points to nothing substantive which pretrial depositions would have produced. *Siglar v. State* (1989), Ind., 541 N.E.2d 944. In addition, there is no indication in the record that counsel was unprepared to try the case. Counsel vigorously objected to the admission of evidence and vigorously cross-examined witnesses. Saunders has failed to persuade us that the performance of counsel was unreasonable or that the outcome of the trial would have been different had counsel deposed any witnesses. Standing alone, his mere allegation of ineffective assistance is insufficient.

Moreover, we require a defendant to be competent in order for him to stand trial. The test for competency is whether the defendant has sufficient present ability to have a rational as well as a factual understanding of the proceedings against him

and further has the ability to cooperate with and consult with his defense counsel. *Bramley v. State* (1989), Ind., 543 N.E.2d 629. In light of this requirement, we do not consider it unreasonable for Saunders' counsel to seek his input about what questions to ask witnesses during the trial. Once again, Saunders fails to show how this pretrial preparation would have aided his defense. He has failed to provide us with any questions or subject areas which his counsel failed to address, at trial. By this failure, Saunders has failed to persuade us that the outcome of the trial would have been different had counsel investigated or prepared more fully.

■■■■ Finally, Saunders claims counsel rendered ineffective assistance with his failure to include all of the above alleged errors in a motion to correct error and also with his failure to file a timely appeal. However, after trial counsel had failed to perfect an appeal within the time limits provided by the various rules of procedures, newly appointed appellate counsel, who is Saunders' current counsel here, filed a belated motion to correct errors, which was accepted by the trial court. In that motion and in a subsequent supplement, counsel raised each allegation of error, including those addressed to ineffectiveness of counsel, which she now raises on appeal. As can be seen, we have addressed each allegation of error in this decision. Therefore, Saunders could not have been prejudiced by any omissions of trial counsel; he has had his appeal. He is not entitled to reversal on this issue.

### IX.

Was Saunders improperly arrested on a faulty summons without an arrest warrant?

Saunders claims he was arrested on a summons, not on an arrest warrant, and was then held in detention for four days before his initial appearance in front of a judicial officer, all to his prejudice. The record reveals that Saunders was arrested on April 25 and was taken to the police station, where he gave the statement referred to in the above sections of this decision. However, the initial informations and affidavits for probable cause were not filed until April 29; and probable cause was not found until April 30, when a warrant was issued.

■■■■ Even if we assume Saunders was held without warrant on an improper summons, Saunders is not entitled to a reversal of his convictions. The statute which governs arrest without warrant provides that a person arrested without a warrant for a crime shall be taken promptly before a judicial officer in the county in which the arrest is made, or of any county believed to have venue over the offense committed, for his initial hearing in court. Ind.Code 35–33–7–1. The Supreme Court of South Dakota has held that a similar statute is intended to avoid unnecessary delay during which time arresting officers might seek to elicit confessions or marshall evidence for presentation. *State v. Provost* (1978), S.D., 266 N.W.2d 96. Accordingly, the normal remedy for violation of such a statute is the suppression of any evidence obtained during the unreasonable delay. *See United States v. Studley* (9th Cir.1986), 783 F.2d 934. Thus, a conviction based upon competent evidence will not be voided for failure to present the accused to a committing authority with reasonable promptness. *Tarkington v. United States* (4th Cir.1952), 194 F.2d 63. Unreasonable delay in taking an accused before a commissioner, though illegal, does not invalidate a conviction in the absence of prejudice. *Morse v. United States* (5th Cir. 1958), 256 F.2d 280. Furthermore, a reviewing court need not address the issue of the illegality of a detention based upon an unreasonable duration of confinement where the appellant does not contend that evidence was seized incident to the arrest, that he was subjected to improper interrogation prior to arraignment, or that he was otherwise prejudiced by delay. *Studley, supra*, 783 F.2d 934.

■■■■ In the present case, Saunders generally alleges the delay caused him prejudice but does not inform this Court about how any delay was specifically prejudicial

to his case. He does not contend that evidence seized incident to his arrest was admitted against him at trial. He does not contend he was subject to improper interrogation prior to arraignment which in any way could be attributed to the unreasonableness of the delay. In effect, he has not convinced this Court that a new trial would not turn out exactly the same as the first trial did because the State could introduce exactly the same evidence.

Saunders' only remedy in conjunction with this issue would be to move to suppress any evidence obtained during the delay. While he moved to suppress his taped statement at trial, he does not allege the tape was improperly admitted in this appeal. Thus, because Saunders does not allege any evidence was improperly obtained during the unreasonable portion of the alleged delay, his conviction is not affected by that delay. He has not convinced us he was prejudiced and is not entitled to reversal.

## X.

Did the trial court improperly instruct the jury to find Saunders guilty of a class A felony or a class B felony in its verdict?

The jury in this case returned to the court with its verdict, and the foreman stated that the jury had reached a verdict of guilty. After the trial judge reviewed the verdict forms, he noted the blank spaces for the guilty finding in the cocaine related offenses had been left blank, that is, the jury had not indicated whether it considered Saunders guilty of each offense as a class A felony or as a class B felony. The trial judge then returned the jury to its deliberations to discuss the issue and to complete the verdict forms. When the jury returned with its verdict forms complete, the judge polled the jury, which affirmed the verdicts as set forth above in this decision.

Saunders now claims, through these actions, the trial court implied to the jury that the court was in fact directing them to find him guilty of class A or class B felonies in the cocaine related offenses. Saunders claims the trial court should have repeated all of the instructions to the jury and that to do so would have prevented harm and prejudice to him. He points to the completed verdicts, all of which show a finding of guilt as class A felonies, as evidence of this prejudice.

The trial judge has the duty to send the jury back to correct a defective verdict before the verdict is accepted and the jury is discharged. Defense counsel has a duty to raise such a question when it becomes apparent. *Grimm v. State* (1980), 273 Ind. 21, 401 N.E.2d 686. Consequently, when a jury has been allowed to separate and return a sealed verdict, and upon reassembling, the verdict is found to be defective, the jury may be required to retire to their room and make the proper amendment or correction. *Pehlman v. State* (1888), 115 Ind. 131, 17 N.E. 270.

In this case, the jury returned with guilty verdicts with simple defects. The jury had failed to designate the felony class of which they had found Saunders guilty. The trial judge properly returned the jury to its deliberations to consider and correct the verdict. This issue does not entitle Saunders to a reversal.

Judgment affirmed.

RATLIFF, C.J., concurs.

SHIELDS, P.J., concurs in part and dissents in part with opinion.

SHIELDS, Presiding Judge, concurring in part and dissenting in part.

I concur in the majority decision with the exception of Issue VI. Though I agree with the majority's decision that the trial court ordered Saunders's sentences served consecutively pursuant to IC 35–50–2–1(a) (1988), I believe the trial court's enumerated reasons for the consecutive sentence order is insufficient and the order is manifestly unreasonable.

I appreciate the broad discretion a trial court has in making sentencing determinations and do not seek to interfere in the exercise of that discretion. Nevertheless, on occasion, when the sentence imposed

appears to be manifestly unreasonable in light of the nature of the offense and the character of the offender, this court has the constitutional duty to revise the sentence on appeal. Ind.Appellate Rule 17. Such is the case here.

The trial court's stated aggravating factors in support of the consecutive sentence order is Saunders's long criminal history and the fact he committed the offenses while on parole. Saunders' criminal convictions consist of a 1976 conviction for arson and a 1984 conviction for fleeing a police officer. Apparently Saunders was on parole from the fleeing conviction when the instant offenses were committed in 1986. In my opinion, no reasonable person could conclude the aggregate sentence of one hundred and forty (140) years is justified by these two convictions even though Saunders had not been discharged from the second conviction at the time of the instant offenses.

Certainly the nature of the offenses of which Saunders was convicted is egregious. There is no more serious problem facing this nation today than controlled substances. This fact has been recognized by our legislature in classifying the circumstances under which Saunders conspired to deal and dealt in cocaine as class A felonies, and the circumstances under which he conspired to deal and dealt in LSD as a class B felony. Furthermore, there is statutory authority for aggravating the presumptive felonies for these serious class felonies if the circumstances surrounding the offenses are aggravated or unique. Nevertheless the trial court failed to find any such aggravated or unique circumstances, concentrating instead on Saunders's character. At the same time, the trial court failed to reveal anything about Saunders's character other than that he had two prior convictions and was on parole at the time of the instant offenses.

In my opinion, Saunders's two prior convictions are not appropriately characterized as a long criminal history but they are two prior convictions which, with the parole violation, merit an aggravated sentence. My dispute is with the extent of the aggravation. Again, I am loathe to second guess the trial court but this court is constitutionally mandated to do so when it appears that the sentence imposed is manifestly unreasonable. Based upon the aggravating factors enumerated by the trial court I agree the three dealing counts should be served consecutively to one another and the three conspiracy counts should be served consecutively to one another, as ordered by the trial court. However, unlike the trial court, I vote to order the dealing counts be served *concurrently* to the conspiracy counts. Thus, I vote to order a total consecutive sentence of seventy (70) years.